972 F.2d 980
 38 Soc.Sec.Rep.Ser. 383, 15 Employee Benefits
Cas. 2177,
Medicare & Medicaid Guide P 40,728
James MAXA, as the Personal Representative for the Estate of
Neil Maxa, Appellant,
v.
JOHN ALDEN LIFE INSURANCE COMPANY, Appellee.
 No. 91-2203.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1991.
Decided Aug. 17, 1992.
 
 1
 R. Stephen Tillitt, Minnetonka, Minn., argued, for appellant.
 
 
 2
 Patrick J. O'Connor, Jr., Minneapolis, Minn., argued (James B. Sheehy, on the brief), for appellee.
 
 
 3
 Before JOHN R. GIBSON, Circuit Judge, MAGILL, Circuit Judge, and KAUFMAN,* Senior District Judge.
 
 
 4
 FRANK A. KAUFMAN, Senior District Judge.
 
 
 5
 In July of 1984, at the request of Neil Maxa ("Maxa"), as president of H.R. Peterson Co., Inc. ("Peterson"), John Alden Life Insurance Company ("John Alden") instituted a group health benefit plan for that company.[1] Maxa, then sixty-two years old, was accepted by John Alden for group health insurance coverage as an employee of Peterson and received, inter alia, a certificate of group insurance and a brochure, each of which outlined in some detail Maxa's rights and responsibilities under the group plan. When Maxa turned sixty-five years old, his insurance premium was reduced from $210.00 to $134.00. At that time, Maxa did not apply for any Medicare benefits. In early 1989, while still employed by Peterson, Maxa was hospitalized for an extended period of time. At the time of Maxa's death in June, 1989, a number of his medical and hospitalization bills remained outstanding. John Alden paid only some of those bills, claiming that it was not liable under the terms of the plan for the bills which Medicare would have covered if Maxa had enrolled for Medicare.
 
 
 6
 Maxa's son, James, as personal representative of his father's estate, commenced the within ERISA action against John Alden in September, 1990, alleging wrongful denial of medical benefits under 29 U.S.C. § 1132(a)(1)(B), failure to provide an adequate summary plan description as required by 29 U.S.C. § 1022(a)(1), and breach of fiduciary duty as imposed by 29 U.S.C. § 1109(a). The parties filed cross-motions for summary judgment. In its summary judgment motion, the estate sought the benefits denied by John Alden on the grounds that (1) the summary plan description was faulty, (2) John Alden breached its fiduciary duty to Maxa by failing to notify him upon his sixty-fifth birthday that his plan benefits would be reduced by the amount of the Medicare coverage which he would receive if he were to apply for Medicare, and (3) the limitation which, John Alden maintains, reduces plan benefits by the amount of possible available Medicare benefits is unlawful.
 
 
 7
 The district court granted John Alden's motion for summary judgment, and denied the estates' motion for summary judgment, concluding that although the summary plan description may not have met the requirements of ERISA, plaintiff had not come forward with sufficient evidence of detrimental reliance by Maxa upon that description. The district court further declined to hold, upon the evidence presented below, that ERISA requires individualized notice of reduction of benefits. Finally, the district court found unpersuasive plaintiff's argument that the limitation of benefits provision at issue is void as a matter of law. In this appeal, the estate apparently seeks to have this Court reverse the district court's grant of summary judgment in favor of Alden and to remand this case to the district court with instructions to grant the estates' motion for summary judgment. In so doing, the only issues which the estate presses in this Court are those which relate to the three bases of the district court's grant of summary judgment in favor of John Alden.
 
 
 8
 The estate first maintains that none of the three sets of documents which Maxa received from John Alden should be considered a summary plan description. Although apparently none of those documents was entitled "summary plan description," at least one of those documents, namely, the certificate of group insurance, provided a benefits summary which is the equivalent of a summary plan description.[2]
 
 
 9
 Appellant further contends that the following provision in John Alden's certificate of group insurance fails to meet the requirements of 29 U.S.C. § 1022(a)(1):
 
 COORDINATION OF BENEFITS
 
 10
 We will coordinate your Medical and Dental Benefits (if applicable) with benefits payable under other plans. The other plans are those which provide benefits or services in connection with medical or dental care or treatment through:
 
 
 11
 ....
 
 
 12
 4. Medicare (Parts A & B) when you are eligible for Medicare coverage. For purposes of determining your Medicare benefits, you will be deemed to have enrolled for all coverages for which you are eligible under Medicare (Parts A and B), whether or not you actually enroll.
 
 
 13
 Coordination means that benefits are paid so that no more than 100% of your necessary, reasonable, and customary expenses will be covered under the combined benefits from all plans.[3]
 
 
 14
 Appellant claims that while, under the above-quoted provision, a plan participant may not collect benefits which have already been provided by Medicare, the wording of that provision does not require that plan benefits be reduced by the amount of payments which could have been, but have not been, received from Medicare. In the alternative, the estate argues that the said "COORDINATION OF BENEFITS" provision is ambiguous and therefore (1) should be construed against John Alden under the doctrine of contra proferentum, and/or (2) cannot be enforced against the estate because Maxa detrimentally relied upon or was prejudiced by that ambiguous provision.
 
 
 15
 This Court, in reviewing the district court's grant of summary judgment, determines de novo whether summary judgment is properly granted, Lone Ranger Television v. Program Radio Corp., 740 F.2d 718, 720 (9th Cir.1984), and may consider only the record before the district court at the time the summary judgment ruling was made. See 10 Charles A. Wright et al., Fed. Prac. and Proc. § 2716 at 650-654 (1983). The court below made its summary judgment determinations on the basis of the record before it after both parties had full opportunity to present appropriate materials and arguments in accordance with Federal Rule of Civil Procedure 56. In such a context, "the inferences to be drawn from the underlying facts ... 'must be viewed in the light most favorable to the party opposing the motion.' " Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).[4] Here, however, there were criss-cross summary judgment motions. See generally 10A Charles A. Wright, et al., supra § 2720 (1983). While the opponent of each such motion may be entitled to certain factual inferences running in its favor, in this instance we will consider the appeal on the basis of giving to the estate, the plaintiff-appellant, the benefit of all reasonable factual inferences, and will also give full effect to the following command of the Supreme Court:
 
 
 16
 [A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.
 
 
 17
 Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The plan herein does not confer upon the administrator or fiduciary any such discretion. Accordingly, the review herein by this Court will be conducted de novo. In so doing, this Court, in interpreting the benefit plan at issue, will look first to a combination of the ERISA statute itself and of related federal common law, and then will move to a consideration of state law only "if [the state law] is [not] contrary to the provisions of ERISA." Brewer v. Lincoln National Life Insurance Co., 921 F.2d 150, 153, 154 (8th Cir.1990).
 
 I.
 Summary Plan Description
 
 18
 ERISA sets forth the relevant requirements for a proper summary plan description in the following terms:§ 1022. Plan description and summary plan description
 
 
 19
 (a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries ... The summary plan description shall include the information described in section (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan....
 
 
 20
 ....
 
 
 21
 (b) The plan description and summary plan description shall contain the following information: ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits....
 
 
 22
 29 U.S.C. § 1022(a)(1), (b) (1975). Pursuant to 29 U.S.C. § 1135, the Secretary of Labor is empowered to prescribe necessary regulations and forms. Pursuant to that power, regulations promulgated by the Secretary state that
 
 
 23
 [t]he format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries. Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure, or otherwise made to appear unimportant....
 
 
 24
 29 C.F.R. § 2520.102-2(b) (1991). Those regulations also recommend, in certain circumstances, the use of "clarifying examples" and the avoidance of "technical jargon" and complex sentences. 29 C.F.R. § 2520.102-2(a) (1991).
 
 
 25
 Taken in its entirety, the "COORDINATION OF BENEFITS" provision in the plan at issue, as quoted supra, is not crystal clear, but can reasonably be read to imply that benefit coverage will be reduced by the amount of Medicare coverage for which one is eligible. That provision does not unambiguously state, as appellant urges, that only the receipt of duplicative benefits are prohibited. On the other hand, this Court, like the trial court, doubts whether the summary plan description meets the requirements of ERISA and its attendant regulations. Nevertheless, those doubts alone do not entitle the estate to victory, because in order " '[t]o secure relief on the basis of a faulty summary plan description, the claimant must show some significant reliance on, or possible prejudice flowing from the summary.' " Anderson v. Alpha Portland Industries, Inc., 836 F.2d 1512, 1520 (8th Cir.1988) (quoting Lee v. Union Electric Co., 789 F.2d 1303, 1308 (8th Cir.), cert. denied, 479 U.S. 962, 107 S.Ct. 460, 93 L.Ed.2d 406 (1986).
 
 
 26
 Appellant takes the position that the estate was prejudiced by having to pay substantial unreimbursed medical expenses and contends that Maxa's detrimental reliance upon that plan may be inferred as a matter of law from the facts of this case. Maxa's estate certainly appears to have suffered a loss because Maxa failed to enroll in Medicare. However, in order to recover for a faulty plan summary, appellant must demonstrate that the plan description caused the estate's decedent not to apply for Medicare. Anderson, 836 F.2d at 1520. "[E]vidence of detrimental reliance must show that the plaintiff[ ] took action, resulting in some detriment, that [he] would not have taken had [he] known [that the terms of the plan were otherwise]," Monson v. Century Mfg. Co., 739 F.2d 1293, 1302 (8th Cir.1984), or that he failed, to his detriment, to take action that he would have taken had he known that the terms of the plans were otherwise. Appellant neither provided nor proffered below, or for that matter even in this Court, any direct evidence that Maxa failed to enroll in Medicare because of the language of the plan summary. Further, the facts of this case are not like those of Monson, in which detrimental reliance by the participants was inferred because the plan administrators clearly and repeatedly represented, in oral and written communications, that the terms of the profit-sharing plan therein at issue were contrary to the terms actually being enforced. Here, the plan description provided by the certificate of group insurance--while arguably not as clear as it could have been with regard to whether application for Medicare was absolutely necessary to assure total coverage--enabled a reasonable participant to conclude that he or she might have to enroll in Medicare in order to avoid a reduction of overall benefits, and, at the very least, did not suggest to a reasonable reader that there was no need to apply for Medicare. Moreover, the reduction of Neil Maxa's premiums from $210.00 to $134.00 undercuts the estate's argument of detrimental reliance because it should have brought to the attention of a reasonable participant in Neil Maxa's shoes the possibility that his benefits had been reduced.
 
 
 27
 We also note that we are bound by this Court's earlier holding in Brewer that "the contra insurer rule [i.e., the doctrine of contra proferentum ] does not regulate insurance and is preempted by ERISA." 921 F.2d at 153. That rule "requir[es] that ambiguities in insurance contracts be resolved in favor of the insured ..." Id. However, as Brewer states, that "rule of construction violates the provisions of ERISA and thus cannot be used to interpret the plan's terms." Id.
 
 II.
 Individualized Notice
 
 28
 Appellant contends that John Alden breached its fiduciary duty under 29 U.S.C. § 1104(a)[5] by failing to notify Maxa on his sixty-fifth birthday that his benefits would be reduced and that he needed to enroll in Medicare in order to have full medical coverage.[6] The great majority of courts, however, have not imposed upon an ERISA plan fiduciary the duty individually to notify participants and/or beneficiaries of the specific impact of the general terms of the plan upon them. As the Ninth Circuit concluded in Stahl v. Tony's Bldg. Materials, Inc.:
 
 
 29
 Stahl contends that the Trust Fund had the duty to warn him individually prior to expiration of the collective bargaining agreement that the expiration would put his past service credits in jeopardy. ERISA contains no provision requiring pension plan administrators to provide notice to plan participants other than the disclosure provisions of 29 U.S.C. §§ 1021(a)(1) and 1022 (1982), regarding the requirement of publishing a summary plan description. However, as fiduciaries, the duties of plan administrators go beyond those specified in the statute, and include duties derived from common law trust principles....
 
 
 30
 We decline to rule, however, that the Trust Fund's fiduciary duties required it to provide any individualized notice to Stahl. The Trust Fund ... adequately explained the rule that it applied to Stahl in its summary plan description. Even though compliance with the specific terms of ERISA does not eliminate all other fiduciary duties in all other situations, we decline to impose the disclosure requirement that the Stahls request. Not only do we lack evidence about the feasibility of providing such notice in this particular case, but to impose such a disclosure requirement would create a conflict with the Third and Seventh Circuits on an important national issue. See Cummings v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 387 (7th Cir.) (summary plan description met ERISA's disclosure requirements and there was no duty to individually warn plan participants or beneficiaries), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986); Allen v. Atlantic Richfield Retirement Plan, 480 F.Supp. 848, 851-52 (E.D.Pa.1979) (since summary plan description clearly warned employees of thirty-day waiting period for election of benefits, and since there was no indication that Congress intended to impose any further duties on plan fiduciaries, trustees had fulfilled their fiduciary duties), aff'd, 633 F.2d 209 (3d Cir.1980).
 
 
 31
 875 F.2d 1404, 1409-10 (9th Cir.1989) (emphasis added) (footnote omitted). To the same effect, see Childers v. Northwest Airlines, Inc.:
 
 
 32
 Courts that have considered the applicability of [Section 1104] to notice-related claims have held that § 1104 does not impose a fiduciary duty to provide individualized notice of the effect a particular event may have on a participant or beneficiary's eligibility to receive benefits. [Citations]. The rationale for this holding is that fiduciaries should be able to rely upon the detailed and uniform guidance ERISA provides with regard to disclosure requirements rather than bearing the practically impossible burden of anticipating, and comprehensively addressing, the individualized concerns of thousands of employees, especially without notice of those concerns.
 
 
 33
 688 F.Supp. 1357, 1361 (D.Minn.1988) (emphasis added). See also Howard v. Gleason Corp., 716 F.Supp. 740, 744-45 (W.D.N.Y.1989) (stating that "it would have been a good idea for an employer to include a printed notice of an employer's conversion option with his or her final paycheck. Unfortunately, that responsibility is not mandated by the ERISA. That may be a matter for Congress to consider.")
 
 
 34
 Under the circumstances of this case, this Court does not construe ERISA or the regulations under it to require that the appellee had a duty individually to warn, upon their sixty-fifth birthdays, each and all of the members of the plans which it insured that their benefits would be reduced according to the plan's coordination of benefits provision unless they enrolled in Medicare. Appellant has not provided any evidence concerning the feasibility of requiring John Alden to supply such notice. Moreover, on the facts of this case, the arguable ambiguity of the coordination of benefits provision at issue does not require a reviewing court, in order to achieve a fair result, to visit from hindsight upon the administrator and/or the fiduciary the requirement of individual notice.
 
 III.
 Void Against Public Policy
 
 35
 Appellant claims that appellee's coordination of benefits policy violates 42 U.S.C. § 1395y(b)(3)(A)(i) and that appellant may therefore seek double damages for its unreimbursed medical expenses under 42 U.S.C. § 1395y(b)(5). Appellant argues that Congress, through the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), amended the Social Security Act, as shown by 1395y(b)(3)(A)(i) and (b)(5), so as to make Medicare the secondary payor where an employee is covered under a group health plan.
 
 Section 1395y(b)(3)(A)(i) states:
 
 36
 Payment [of Medicare] under this subchapter may not be made, except as provided in clause (ii), with respect to any item or service furnished in any month during the period described in clause (iii) to an individual (or to the spouse of such individual) who is employed at the time such item or service is furnished to the extent that payment with respect to expenses for such item or service has been made, or can reasonably be expected to be made, under a group health plan (as defined by clause (iv)) under which such individual is covered by reason of such employment.
 
 
 37
 42 U.S.C. § 1395y(b)(3)(A)(i) (1988). Section 1395y(b)(5) states:
 
 
 38
 There is hereby created a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a workmen's compensation law or plan, ... group health plan, or large group health plan which is made a primary payor under paragraph (1), (2), (3), or (4), respectively, and which fails to provide for primary payment (or appropriate reimbursement) in accordance with such respective paragraphs.
 
 
 39
 42 U.S.C. § 1395y(b)(5) (1988).
 
 
 40
 Appellant asserts that Alden's coordination policy contravenes the above-quoted provisions of the Social Security Act. But those provisions, by their plain meaning, do not prohibit such a plan policy. Nor has appellant provided any case law or legislative history which supports its suggested reading of the Social Security Act. Assuming arguendo only, however, that appellant is correct concerning the import of Section 1395y, the legislative history of the 1988 TEFRA amendments, which appellant claims amended the Social Security Act to ban a coordination policy such as that of John Alden, shows that Congress did not intend those amendments to apply to "any employer health benefits plan offered by employers employing less than 20 full-time employees." Pub.L. No. 97-248, 97th Cong., 2d Sess. (1982), reprinted in 2 U.S.C.C.A.N., 1982, at 793 (1982). In this case the record reveals--and appellant has not denied--that Peterson employed less than twenty individuals, i.e. approximately five. Thus, the following comment in the Senate Report, accompanying the legislation relied upon by appellant, is applicable:
 
 
 41
 The committee believe[d] that changes in the primacy relationship between Medicare and employer-based plans should not extend to small businesses, which often employ many older workers as a significant part of their total work force. Increases in the fringe benefit costs of these employers could discourage them from continuing to hire or to retain older workers in their jobs.
 
 
 42
 Id. Moreover, in 1990, Congress explicitly excluded the group health plan of a small employer from the reach of Section 1395y. See 42 U.S.C. § 1395y(b)(1)(A)(ii) (1990). Thus, it appears that Section 1395y does not apply to the group health plan which was provided to Peterson by Alden. Accordingly, appellant's argument that the coordination policy is void as contrary to Section 1395y is without merit.
 
 IV.
 Conclusion
 
 43
 For the reasons stated in this opinion, the district court's grant of summary judgment in favor of defendant/appellee is hereby affirmed.
 
 
 44
 AFFIRMED.
 
 
 
 *
 The Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation
 
 
 [1]
 Judge Magnuson, in his Memorandum and Order dated April 17, 1991, from which plaintiff below appeals herein, stated that "[p]laintiff ... does not dispute that Neil Maxa, as president of the Peterson Company, was to be the administrator of the plan." Memorandum and Order at 3 (April 17, 1991). On appeal, however, appellant James Maxa claims that "there was some question below on who is the plan administrator," and contends that John Alden is the plan administrator because ERISA so designates John Alden, and because John Alden prepared the plan documents and made claims decisions with regard to the plan. For the purposes of this appeal, this Court assumes arguendo only that, as asserted by James Maxa, John Alden is the proper plan administrator
 
 
 [2]
 It appears from the record that John Alden typically sends to an employer a form entitled "Summary Plan Description" to which the employer or administrator of the plan is supposed to attach the certificate of group insurance. The parties dispute whether John Alden delivered such a form to Neil Maxa as president of Peterson
 
 
 [3]
 Another of the documents which Neil Maxa received is a brochure entitled North Star Employers Trust which states inter alia:
 Special Features and Limitations
 ....
 
 
 [3]
 Benefits may be reduced by the benefits payable under any other group-type insurance plan. The benefits of this Plan will also be coordinated with the benefits available under Medicare (Parts A & B) when the individual becomes eligible for Medicare. See GENERAL INFORMATION--Coordination of Benefits
 ....
 Coordination of Benefits
 The Plan contains a provision which coordinates the Medical and Dental Benefits provided with any other benefits to which a person may be entitled under any other group-type insurance or medical care plan, including Medicare (Parts A & B) when the person becomes eligible under Medicare. The result of this provision will be that a person with coverage under more than one plan will not be entitled to receive benefits in an amount greater than 100% of the covered charges that are actually incurred.
 
 
 [4]
 "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ..." Id. at 323-24, 106 S.Ct. at 2553
 
 
 [5]
 Section 1104 states in pertinent part:
 (1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan;
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.
 
 
 [6]
 We assume, arguendo only, for the purpose of this appeal that John Alden was both a fiduciary and an administrator with respect to the benefits plan at issue. See supra n. 1