# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2817MN

_____

Mary Ellen Marolt,               *

                               *

          Appellee,          *

                               *

      v.                        *

                               *    Appeal from the United States

Alliant Techsystems, Inc.; Alliant     *    District Court for the District

Techsystems Pension and Retirement  *    of Minnesota.

Administrative Committee; Mellon     *

Bank, N.A.,                    *

                               *

          Appellants.      *

_____

Submitted: May 13, 1998
Filed: July 13, 1998

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

Alliant Techsystems, Inc. (Alliant Tech), the Alliant Techsystems Pension and Retirement Administrative Committee (PRAC), and Mellon Bank, N.A. (collectively Alliant) appeal the district court's order granting summary judgment for Mary Ellen Marolt, and denying Alliant's cross-motion for summary judgment, in this Employee Retirement Income Security Act (ERISA) lawsuit. We agree with the district court that

the PRAC abused its discretion in rejecting Marolt's appeal concerning her retirement benefits, and we thus affirm.

The pertinent facts are undisputed. Marolt worked at Honeywell from 1980 to 1989. In September 1990 Honeywell spun off several divisions to create Alliant Tech, a subsidiary of Honeywell. In November 1990 Marolt took a temporary position with Alliant Tech. The following March, Marolt's supervisor offered Marolt a permanent position. The supervisor told Marolt she believed Marolt was entitled to "bridge" her break in service--that is, to date her employment with Alliant Tech from the start of her employment at Honeywell, which would increase Marolt's retirement benefits. After Marolt's supervisor discussed the matter with Alliant Tech's human resources department, she assured Marolt the break would be bridged, and Marolt accepted the permanent position. Marolt then formally applied for bridging to her Location Benefits Administrator (LBA), who approved the application in December 1991. Alliant Tech confirmed Marolt's bridging status several more times, both orally and in writing. In June 1994, however, Marolt's LBA informed Marolt she was not entitled to bridging after all because she had not been employed with Honeywell on the date of the Alliant Tech spin off. The PRAC denied Marolt's appeal of this decision without further explanation, saying only that it "recognize[d] that errors had been made in communicating credited service[] dates, but the correction to you was communicated properly. As a result, your request to bridge your credited service is denied." Marolt then brought this lawsuit under 29 U.S.C. § 1132(a)(1)(B) to clarify her rights to future benefits.

Alliant Tech's Summary Plan Description (SPD) contains the following relevant provisions:

> If you leave Alliant Techsystems and later return, you have a *break in service*. You may be eligible to receive credit for your prior service, through a process called *bridging*, when you return to work.

*It is **your** responsibility to initiate bridging of a break in service by contacting your Location Benefits Administrator (LBA). . . .*

**If you left Alliant Techsystems (Honeywell) on or after February 1, 1976:** Your service before the break will be counted if:

You were vested and had at least five years of credited service when your employment ended; **or**

You were not vested and were away from the company for less than five years; **or**

The length of time you were away from the company was less than your credited service at the time you left; **or**

Your total periods of credited service equal 20 years or more. . . .

*Notes*: 1) Generally, credited service with Honeywell Inc. prior to our 9/28/90 spinoff is included in credited service with Alliant Techsystems. . . . 4) Temporary service prior to January 1, 1990, may count toward credited service. Your Location Benefits Administrator can provide details if needed.

It is undisputed that Marolt was vested under Honeywell's retirement plan, that Marolt had more than five years of credited service at Honeywell, and that Marolt left Honeywell after February 1, 1976. Thus, according to the SPD her "service before the break will be counted."

Alliant Tech's formal retirement plan document also addresses the bridging issue, although it takes some digging to understand how. Section 1.1.12(a) of the formal plan provides that "[s]ervice with Honeywell Inc. shall be considered service with [Alliant Tech] to the extent described in Section 1.5." Section 1.5 states that "service with Honeywell Inc. shall be considered service with [Alliant Tech] for purposes of determining Credited Service under Section 1.1.12 to the extent . . . such

crediting is required under the Distribution Agreement . . . ." Section 1.5 does not refer the reader to any particular part of the Distribution Agreement, a 115-page document governing the Alliant Tech spin off. Nevertheless, on page seventy-four of that document, subsection 8.03(d)(i) gives credit for service at Honeywell to "Transferred Employees," and on pages thirteen and fourteen "Transferred Employee" is defined to include only those persons who were employed at Honeywell on the date of the spin off. Marolt was not employed with Honeywell on that date. The district court concluded, however, that the Distribution Agreement is not part of Alliant Tech's ERISA plan. With the Distribution Agreement out of the picture, the district court held the PRAC's decision was unreasonable because the SPD expressly provides for bridging in cases like Marolt's.

We review de novo the district court's grant of summary judgment for Marolt, applying the familiar standard set forth in Federal Rule of Civil Procedure 56(c), and viewing the factual record in the light most favorable to the losing party, Alliant. See Barker v. Ceridian Corp., 122 F.3d 628, 632 (8th Cir. 1997). Because Alliant Tech's ERISA plan gives the PRAC discretionary authority to interpret and apply the plan's provisions, the district court reviewed the PRAC's decision for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). Under this standard of review, the PRAC's decision stands unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Donaho, 74 F.3d at 900 (internal quotations omitted). "We review *de novo* a district court's application of the deferential standard of review." Id. at 898.

Alliant disagrees with the district court's analysis. First, contrary to the district court's rejection of the Distribution Agreement, Alliant maintains the formal plan document incorporates the Agreement, and under the Agreement's relevant provisions Marolt is disqualified from bridging. Second, contrary to the district court's conclusion that the SPD expressly entitles Marolt to bridging, Alliant contends the SPD is silent

about bridging rights in Marolt's particular circumstances--those of a former Honeywell employee who was not employed with Honeywell on the date of the spin off. See Jensen v. SIPCO, Inc., 38 F.3d 945, 952 (8th Cir. 1994) (observing that although "an SPD provision prevails if it conflicts with a provision of a plan," that rule "does not apply when the plan document is specific and the SPD is silent on a particular matter"). Emphasizing the word "[g]enerally" in note one to the SPD's bridging provisions, Alliant interprets those provisions as general rules only. According to Alliant, another part of the SPD directs plan participants like Marolt to the formal plan document for the specifics on bridging: "This SPD is not meant to cover every detail of the plan. Complete details are in the plan document . . . ." Third, Alliant argues that the SPD itself makes bridging available only to employees who "leave . . . and later return." Alliant interprets this phrase to mean that only those employees who left Honeywell and came back to Honeywell, or who left Alliant Tech and came back to Alliant Tech, are entitled to bridge. Under this interpretation of the SPD, employees like Marolt who left Honeywell and came back to Alliant Tech did not "leave . . . and later return," so the SPD itself disqualifies persons in Marolt's circumstances from bridging.

Alliant does not explain how the SPD can both address Marolt's particular situation and remain silent about it at the same time. Also, Alliant's view that the SPD's general reference to the formal plan--"[c]omplete details are in the plan document"-- requires employees to consult the formal document for details about bridging renders meaningless the SPD's specific direction to consult with and rely on the LBA for those details, as Marolt did. If Alliant's hindsight interpretation of the SPD were the interpretation the PRAC formulated and applied when it decided Marolt's case, we would have to consider whether these inconsistencies make Alliant's interpretation unreasonable. See Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992).

The fact is, the PRAC did not provide a rationale for its decision. The PRAC's failure in this regard was contrary to the ERISA statute, federal regulations, and this

court's longstanding precedent. <u>See</u> 29 U.S.C. § 1133(1) (1994); 29 C.F.R. § 2560.503-1(h)(3) (1997); <u>Richardson v. Central States, Southeast & Southwest Areas Pension Fund</u>, 645 F.2d 660, 664, 665 (8th Cir. 1981). We will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation. The record shows Marolt's LBA took away Marolt's bridging based on the Distribution Agreement. Because the PRAC affirmed the LBA without giving a different explanation, we conclude the PRAC also based its decision on the Distribution Agreement. Contrary to Alliant's contention that "the PRAC implicitly and necessarily interpreted" the SPD, the record shows no such thing, let alone that in deciding Marolt's appeal the PRAC construed particular words and phrases in the SPD as Alliant now does. It is the PRAC's interpretation to which we must defer if reasonable; we are free to ignore ERISA plan interpretations that did not actually furnish the basis for a plan administrator's benefits decision. <u>See</u> <u>Brumm v. Bert Bell NFL Retirement Plan</u>, 995 F.2d 1433, 1437 (8th Cir. 1993).

We have our doubts whether the plan document's reference to the Distribution Agreement sufficed to incorporate the Agreement's relevant provisions in the formal plan. <u>See</u> <u>Rinard v. Eastern Co.</u>, 978 F.2d 265, 269 n.3 (6th Cir. 1992) (requiring, among other criteria, that the "terms of the incorporated document . . . be known or easily available to the contracting parties"). Because the record does not establish that the Distribution Agreement was unavailable to Marolt, however, we will assume the provisions of the Agreement involved here are part of Alliant Tech's formal plan. We may, of course, affirm the district court on any ground supported by the record. <u>See</u> <u>Hall v. LHACO, Inc.</u>, 140 F.3d 1190, 1193-94 (8th Cir. 1998). Although the SPD does not mention the transferred employee restriction, we reject Alliant's view that the SPD is silent on the "particular matter" at issue here, <u>Jensen</u>, 38 F.3d at 952, which is bridging. On that subject, the SPD recites a number of criteria that clearly and unambiguously entitle Marolt to bridge her break in service. Those are binding. <u>See</u> <u>id.</u> Just as clearly, the Distribution Agreement rules out bridging for Marolt. When

summary plan description provisions conflict with formal plan provisions, the summary plan provisions prevail as a matter of law. See Barker, 122 F.3d at 633; Jensen, 38 F.3d at 952. Thus, it was an abuse of discretion for the PRAC to reject Marolt's bridging request based on Distribution Agreement provisions incorporated in the formal plan. See Donaho, 74 F.3d at 900 (plan administrator abuses discretion when its decision is legally erroneous). This case well illustrates the reason for the Barker and Jensen rule. A plan document required by law to be plainspoken for the benefit of "average plan participant[s]," 29 U.S.C. § 1022(a)(1) (1994), and furnished to participants, see id. § 1024(b)(1), says one thing, and an obscure passage in a transactional document only lawyers will read and understand says something else. The accessible provisions govern because "[a]dequate disclosure to employees is one of ERISA's major purposes." Barker, 122 F.3d at 633.

Alliant contends Marolt must prove she relied on the SPD to her detriment. We disagree. We have indeed held that "to secure relief on the basis of a faulty summary plan description, the claimant must show some significant reliance on, or possible prejudice flowing from the summary," Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 984 (8th Cir. 1992) (alteration and internal quotations omitted), but Marolt does not contend Alliant Tech's SPD is faulty. A faulty summary plan description is one that fails to meet "the requirements of ERISA and its attendant regulations." Id. Marolt says in her brief the SPD "meets the requirements of ERISA." Relying on Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1520 (8th Cir. 1988), however, Alliant argues that by claiming the SPD and the formal plan conflict, Marolt necessarily contends the SPD is faulty. Although one or two sentences lifted out of context appear to support Alliant's argument, Anderson does not so hold.

At issue in Anderson was whether the parties to a collective bargaining agreement (CBA) that included a welfare plan intended benefits under the plan to terminate when the CBA expired. See id. at 1513. Contending the parties intended to confer vested lifetime benefits, see id., the claimants in Anderson pointed to a provision

of their SPD, which read: "Coverage will continue for the remainder of your life." Because substantial contrary evidence drawn from the CBA showed no intent to vest benefits, the district court ruled against the claimants despite the SPD's language, and we affirmed. See id. at 1519. The claimants also argued they were entitled to recover under provisions of ERISA that require SPDs to "apprise . . . participants and beneficiaries of their rights and obligations under the plan" and to disclose "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. §§ 1022(a)(1), (b). See Anderson, 836 F.2d at 1519-20. At the same time, the claimants maintained they did not have to show they relied on their SPD because they did not consider the SPD "faulty." We rejected this self-contradictory argument. See id. at 1520. Anderson stands for the unremarkable proposition that an ERISA plaintiff who claims a summary plan description violates 29 U.S.C. § 1022 necessarily contends the summary description is faulty. Marolt makes no such claim.

We affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.