

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-26-2000

# Harte v. Bethlehem Steele

Precedential or Non-Precedential:

Docket 98-2052

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Harte v. Bethlehem Steele" (2000). *2000 Decisions*. Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 29, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-2052

ROBERT J. HARTE, Appellant

v.

BETHLEHEM STEEL CORPORATION; GENERAL PENSION
BOARD OF THE BETHLEHEM STEEL CORPORATION
AND SUBSIDIARY COMPANIES; MICHAEL P. DOPERA,
Secretary, Employee Benefits Administration Committee

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 97-cv-06528)
District Judge: Honorable Edward N. Cahn

Argued: September 28, 1999

Before: BECKER, Chief Judge, McKEE, and NOONAN*
Circuit Judges.

(Filed: February 29, 2000)

        DONALD P. RUSSO, ESQUIRE
         (ARGUED)
        60 West Broad Street
        P.O. Box 1890, Suite 300
        Bethlehem, PA 18016

Counsel for Appellant

_____
* Honorable John Noonan, United States Circuit Judge for the Ninth
Circuit, sitting by designation.

        G. STEWART WEBB, JR., ESQUIRE
          (ARGUED)
        RANDOLPH STUART SERGENT,
         ESQUIRE
        Venable, Baetjer and Howard, LLP
        1800 Mercantile Bank & Trust Bldg.
        2 Hopkins Plaza
        Baltimore, MD 21201

        KATHLEEN M. MILLS, ESQUIRE
        Bethlehem Steel Corporation
        Law Department
        1170 Eighth Avenue
        Bethlehem, PA 18016-7699

        Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

This appeal, arising out of a claim for pension benefits
under ERISA, is set in the familiar factual pattern of an
employee's being denied a more advantageous pension
because of a minor shortfall in the required period of
service. Robert J. Harte had accrued credit for fourteen
years, eleven months, and eleven days at Bethlehem Steel
when the benefits plan administrator terminated his
continuous service (for pension purposes) because Harte
had been absent from work for two years. When Harte's
service was terminated, he was nineteen days short of
eligibility for the "70/80" pension he now seeks. Harte
claims that he did not learn that his service had been
"broken," and hence that he had not accrued the fifteen
years required for the pension, until approximately eight
years later. After finally being notified of his shortfall, Harte
sued, raising a host of arguments for why Bethlehem was
required to give him the 70/80 pension, including
arguments as to why his continuous service should never
have been severed. The District Court granted summary
judgment for Bethlehem.

Harte's strongest claim is a breach of fiduciary duty claim. He argues that (1) the plan document was ambiguous about when a break in service would be effected, (2) he reasonably believed that he was still employed under the terms of the plan, and therefore (3) Bethlehem, as an ERISA fiduciary, should have at least notified him that it was about to break his service. The primary issue presented by this appeal is whether ERISA requires plan administrators, as fiduciaries, to timely inform plan beneficiaries that their service is being broken if the severance is made pursuant to an ambiguous plan provision that a reasonable person could interpret differently from the administrator. We conclude that it does, giving rise to the ancillary issues of whether the plan provision is ambiguous, whether it is material, and whether Harte detrimentally relied on it.

The phrase at issue in this case is "compensable disability." The Bethlehem plan provides that an employee may receive a 70/80 pension after fifteen years of "continuous service." It states that although continuous service is broken two years after leaving work for a disability, it is not broken if the reason for leaving is a "compensable disability incurred during course of employment." Bethlehem represents that the plan administrator, within his authority, has consistently interpreted this phrase to apply only to work-related disabilities that are compensated by state worker's compensation, which Harte did not receive. However, Harte applied for, received, and continues to receive, compensation for his disability through the company's long term disability program. On this ground, he contends that his service should never have been broken because he has a "compensable disability incurred during course of employment." He submits that the term "compensable disability" is ambiguous as to whether it comprehends long term disability benefits as well as worker's compensation benefits.

Although we agree with Bethlehem that the plan administrator had the authority to make the interpretation that he did and to effect the severance, our precedent requires us to conclude that the company also had a

3

fiduciary duty to timely inform Harte of its interpretation. We have consistently held that a fiduciary may not make inconsistent or confusing statements or fail to disclose material facts about a plan. It follows that when a material plan provision regarding severance is ambiguous and beneficiaries might predictably rely on an alternate interpretation, a fiduciary may be held liable for failing to inform them that their service has been broken at a time at which they could attempt corrective action or seek alternatives.

In short, a plaintiff may succeed on a claim under S 502(a)(3) of ERISA when he adduces evidence that (1) a plan provision is material; (2) it is susceptible of multiple reasonable interpretations; (3) the plaintiff relied on it to his detriment; and (4) the company did not timely notify the plaintiff of its interpretation. We therefore vacate the grant of summary judgment and remand the case for further proceedings on the breach of fiduciary duty claim. 1 The District Court properly granted summary judgment for Bethlehem on all other issues, and we affirm summarily with respect to these claims.2

---

1. Bethlehem argues that Harte should not be allowed to proceed on this claim because it was inadequately pled. Harte did not cite S 502(a)(3) in his complaint, nor did he seek to amend the complaint. His complaint does, however, allege the lack of notification, and his papers refer to several cases that revolve around S 502(a)(3) claims. Moreover, the District Court discussed this claim in the context of one of those cases, Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3rd Cir. 1993) (a breach of fiduciary duty case that we discuss more fully infra Section II). We are satisfied that, given our broad notice pleading standards, Harte's breach of fiduciary duty claim has been adequately pled.

2. Harte contends that, given the ambiguity of the plan provisions, Bethlehem could not interpret the plan in a fashion that inhered to its own benefit. However, under the aegis of Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 114-15 (1989), when an ERISA plan provides the plan administrator with fiduciary discretion, courts generally use the arbitrary and capricious standard to review the administrator's decisions. Paragraphs 5.3(a) and 8.1 of the Bethlehem plan grant the administrator the discretion to interpret the "continuous service" provision. Even where the company is both the plan sponsor and plan

4

I.

As far as is pertinent to this appeal, Harte worked at
Bethlehem in several capacities between 1973 and 1986.3
On January 27, 1986, Harte, then a project engineer, left
work because of cardiac problems (angina from a prior
anteriolateral myocardial infarction). He did notfile for, or
receive, state worker's compensation benefits. He did,
however, file for, and receive, long term disability (LTD)
benefits through the company's benefits program, which he
was still receiving as of the date he filed the present
lawsuit. On January 27, 1988, after crediting Harte with 14
years, 11 months, and 11 days of "continuous service,"
Bethlehem terminated his service. This left Harte nineteen
days short of being eligible for pensions which would
provide greater benefits than the deferred vested pension to
which he is currently entitled.

The Bethlehem Plan provides that continuous service
breaks two years after active employment ends due to layoff
or a disability, but does not break if an employee leaves
active employment due to a "compensable disability
incurred during course of employment."4  Michael Dopera,

_____

administrator we have applied the arbitrary and capricious standard of
Bruch. See Abnathya v. Hoffman–La Roche, Inc., 2 F.3d 40, 45 n.5 (3d
Cir. 1993). Applying that standard, Bethlehem's plan administrator did
not abuse his discretion when he concluded that Harte did not have a
"compensable disability incurred during course of employment."
Reviewing the documents available to him, there was no clear indication
that his disability was work–based, and it was within the plan
administrator's discretion to conclude that those on worker's
compensation should be credited for continuous service for the time that
they were on worker's compensation, while those who left for other
disability–based reasons should not be so credited. The issue decided in
the text is, of course, a different one.

3. Harte also worked for Bethlehem briefly in 1952 and again between
1962 and 1967. His claim that his previous service must be used to
calculate the time he can credit towards his pension claims is patently
without merit and we reject it without further discussion.

4. In section 5.1 the term "continuous service" is defined (emphasis
added):

5

plan administrator of the Bethlehem Pension Plan, testified
by deposition that he broke Harte's continuous service in
January 1988, because he left for medical reasons but did
not have a "compensable disability" within the meaning of
the plan. According to Dopera, "compensable disability
incurred during course of employment" has always been
interpreted by his office to apply only to those disabilities
"where the recipient is getting worker's compensation
benefits." Dopera conceded that there was no document
available to the employees in which this interpretation was

_____

The term "continuous service" as used in this Plan means
continuous service in the employ of one or more of the Employing
Companies, except as in this Section 5 otherwise provided, prior to
retirement calculated from the Employee's last hiring date (this
means in the case of a break in continuous service, continuous
service shall be calculated from the date of reemployment following
the last unremoved break in continuous service) in accordance with
the following provisions; provided, however, that the last hiring
date
prior to the effective date of this Plan shall be based on the
practices
in effect at the time the break occurred:

(a) There shall be no deduction for any time lost which does not
constitute a break in continuous service, except that in
determining length of continuous service for pension purposes:

(1) that portion of any absence which continues beyond two
years from commencement of absence due to a layoff or
disability shall not be creditable as continuous service;
provided, however, that absence in excess of two years due to
a compensable disability incurred during course of employment
shall be creditable as continuous service, if the Employee is
returned to work or retires within 30 days afterfinal payment
of statutory compensation for such disability or after the end
of the period used in calculating lump sum payment

. . .

(b) Continuous service shall be broken by:

(4) absence which continue for more than two years, except
that (i) absence in excess of two years due to a compensable
disability incurred during course of employment shall not
break continuous service, provided the Employee is returned
to work or retires . . . .; (ii) if an Employee is absent on
account of layoff or disability in excess of two years . . .

6

announced or formalized. Nor did he suggest that the plan mandated that interpretation, but rather that the plan "provides that we have the right to interpret  provisions under the administration section. We interpret  the compensable disability occurred during course of employment to mean someone actually getting worker's compensation payments." (emphasis added).

In November 1995, Harte received a letter stating that his continuous employment had been severed as of January 27, 1988, seven years and ten months earlier, and that he was eligible for a deferred vested pension. He immediately objected and wrote several letters to the company. Bethlehem apologized for not informing him earlier, blaming the lack of official notice on a "clerical error." Bethlehem represents that it has a policy of notifying plan participants that their service has been broken shortly after the severance and there is no evidence that it does not generally do so, or that Bethlehem was acting in bad faith when it failed to notify Harte in 1988.

Harte filed suit in District Court advancing several claims. As far is as is relevant for this appeal, the Court rejected Harte's contention that Bethlehem had an obligation to notify him when he was severed because: (1) it concluded that there was no evidence that Bethlehem had acted in bad faith; and (2) it believed that there was no fiduciary obligation to inform Harte that his service had broken. The Court granted summary judgment across the board for Bethlehem, and this appeal followed.[5]

_____

5. We exercise plenary review over such a decision, see Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996), and apply the same test the District Court should have applied in thefirst instance, see Lawrence v. National Westminster Bank, New Jersey , 98 F.3d 61, 65 (3d Cir. 1996). We must therefore determine whether the record, when viewed in the light most favorable to Harte, shows that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. See Salley v. Circuit City Stores, Inc., 160 F.3d 977, 980 (3d Cir. 1998).

II.

Harte seeks equitable relief under ERISA S 502(a)(3)
(codified at 29 U.S.C. S 1132(a)(3)), a"catchall" provision,
which "act[s] as a safety net, offering appropriate equitable
relief for injuries caused by violations that S 502 does not
elsewhere adequately remedy," including violations of S 404.
Varity v. Howe, 516 U.S. 489, 512 (1996). The alleged
violation of ERISA involves S 404 (codified at 29 U.S.C.
S 1104), which defines fiduciary duties owed by plan
administrators to their beneficiaries.6

> In its declaration of policy, ERISA states:
>
> [O]wing to the lack of employee information and
> adequate safeguards concerning their operation, it is
> desirable in the interests of employees and their
> beneficiaries . . . that disclosure be made and
> safeguards be provided with respect to the
> establishment, operation, and administration of such
> plans.
>
> . . .
>
> It is hereby declared to be the policy of this chapter to
> protect . . . the interests of participants in employee
> benefit plans and their beneficiaries, by requiring the
> disclosure and reporting to participants and
> beneficiaries of financial and other information with
> respect thereto, by establishing standards of conduct,

_____

6. Section 404(a)(1) provides that:

> a fiduciary shall discharge his duties with respect to a plan
> solely in
> the interest of the participants and beneficiaries and--
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the
> circumstances then prevailing that a prudent man acting in a like
> capacity and familiar with such matters would use in the conduct
> of an enterprise of a like character and with like aims;
>
> . . .

8

> responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for
>
> appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. SS 1001(a),(b).

In interpreting similar claims, we have looked to these statements and noted that ERISA was enacted, in part, to ensure that employees receive sufficient information about their rights under employee benefit plans to make well-informed employment and retirement decisions. See Jordan v. Federal Express Corp., 116 F.3d 1005, 1012 (3rd Cir. 1997). The goals of the "fiduciary duty jurisprudence" arising out of ERISA are " `to protect and strengthen the rights of employees, to enforce fiduciary standards, and to encourage the development of private retirement plans.' " Id. at 1014 (quoting In re Unisys Savings Plan Litig., 74 F.3d 420, 434 (3d Cir. 1996)).

These ends are partially served through ERISA's reporting requirements. But the fiduciary duty to disclose and explain is not achieved solely by technical compliance with the statutory notice requirements. In In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig. , 57 F.3d 1255 (1995), we stated that

> satisfaction by an employer as plan administrator of its statutory disclosure obligations under ERISA does not foreclose the possibility that the plan administrator may nonetheless breach its fiduciary duty owed plan participants to communicate candidly, if the plan administrator simultaneously or subsequently makes material misrepresentations to those whom the duty of loyalty and prudence are owed.

Id. at 1264.

The contours of these duties must be defined by the courts in "develop[ing] a federal common law of rights and obligations under ERISA-regulated plans." Varity, 516 U.S. at 497 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110-11(1989)). Administrators have a fiduciary duty "not to misinform employees through material misrepresentations and incomplete, inconsistent or

9

contradictory disclosures." Unisys, 57 F.3d at 1264. Not all misleading statements or omissions by a fiduciary are actionable, only those that are material. A representation or omission is material if "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision." Unisys, 57 F.3d at 1264. The issue of materiality is a matter for the fact-finder if reasonable minds can differ on whether a misleading statement or omission would affect a reasonable employee's retirement decision. See Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993).

This case does not involve affirmative misrepresentations. However, we have made clear that a fiduciary not only has a negative duty not to misrepresent material facts to plan beneficiaries, but also a corresponding affirmative duty to speak "when the trustee knows that silence might be harmful." Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3rd Cir. 1993). The duty extends to "those material facts, known to thefiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1182 (3rd Cir. 1996). "The duty to disclose material information is the core of a fiduciary's responsibility." Id. at 1281 (quoting Bixler, 12 F.3d at 1300).

In Bixler, a widow sued her husband's former employer for failing to provide complete and accurate information about her insurance options, a failure which she claimed harmed her by leading her not to select a particular option. See 12 F.3d at 1296. We held that an ERISA fiduciary who explains insurance benefits has a "duty to convey complete and accurate information," and remanded part of the case to the district court to determine whether material facts were withheld from her and if the defendant was acting as a fiduciary. Id. at 1302.

In Jordan v. Federal Express Corp., 116 F.3d 1005, 1006-10 (3rd Cir. 1997), the plaintiff learned—only after retirement and divorce—that he could not transfer the benefits of his plan to his new wife, and that the plan was irrevocable. These details about the plan were in the plan

10

document itself, but Jordan never requested nor received a complete copy of the plan, and he claimed that he would have chosen a different plan had he known. He did receive a written summary of his retirement options that did not include a reference to irrevocability. Nonetheless, we held that a reasonable fact finder could conclude that, despite its full compliance with ERISA and plan-based reporting requirements, the plan administrator had breached its fiduciary duty by failing to provide him this information. See id. at 1016.

Bethlehem argues that Jordan is distinguishable because in Jordan the plan administrator had already acted and provided incomplete information. See id. at 1016-17. It contends that sending Jordan information triggered a duty to provide complete information about the plan, and since Bethlehem did not provide any information, a duty of completeness cannot have been triggered here. This argument fails for two reasons. First, the Jordan panel did not base the duty to inform completely on the company's prior limited effort at communication. See id. Second, providing a written plan is itself an affirmative act. In a plan, as in a summary plan document, beneficiaries have reason to expect that complete information about all material provisions is available to them when they review the document. Confusing or incomplete information in a plan is at least as likely to cause reliance on a reasonable misinterpretation as is confusing or incomplete information in a summary of the plan. Indeed, when a summary plan or letter includes incomplete information, the employee retains the possibility of reviewing the entire plan, whereas there are no more authoritative documents to review when the ambiguous provision is in the plan itself.

Therefore, we conclude that there is an incomplete disclosure when, as in this case, a material plan provision, easily accessible by a beneficiary, uses terms that are susceptible to reasonable misinterpretation and detrimental reliance thereon. Naturally, in considering the "reasonableness" of a beneficiary's interpretation, the company's own pronouncements and widely-known company practice must be taken into account; if a company adequately informs beneficiaries of its interpretation of a

11

term (when it retains discretion to interpret), it would be patently unreasonable to understand it otherwise. 7 The "duty to convey complete and accurate information," Bixler, 12 F.3d at 1302, logically encompasses a duty to use clear language when describing material terms in a plan, or explain it when it is unclear. The failure to notify a beneficiary that his or her service is being broken pursuant to an ambiguous provision falls within the category of breaches of duty for "failure to disclose" outlined in Bixler, Jordan, Glaziers, and Unisys.

III.

Applying this framework, we conclude that Bethlehem should not have been granted summary judgment on Harte's breach of fiduciary duty claim. The term "compensable disability incurred during the course of employment" is a material term in the context of the plan. The meaning of the phrase affects whether one's employment is considered continuous or broken off, and a fiduciary acting with care, skill, and prudence would know that an employee would want--and need--to know whether his or her disability fell within this category. It is the kind of phrase that is likely to "mislead a reasonable employee in making an adequately informed retirement decision." Unisys, 57 F.3d at 1264. If Harte knew that he was not included in this category, he could have tried to return to less strenuous work for at least nineteen days, or attempted to find work, either at Bethlehem or elsewhere, that would allow him to receive better insurance, or he could have encouraged his wife to seek employment that would better insure them both.

> The disputed phrase is:

> [A]bsence in excess of two years due to a compensable disability incurred during course of employment shall not break continuous service.

_____

7. Although we focus on Bethlehem's failure to notify in this case, we note that it could just as easily have fulfilled its fiduciary duties by using clear language in the plan--i.e., a statement that"compensable disability" only applied to individuals receiving state worker's compensation.

12

Bethlehem claims that this phrase has consistently been interpreted to cover only those cases where a participant applied for and received worker's compensation for a work-related injury. However, Dopera himself called his reading of the phrase an "interpretation," suggesting that the language did not mandate a particular result. Although the phrase could refer only to those disabilities arising out of work, a reasonable person could also read this phrase to apply to any disability, illness, or injury that came upon an employee during the broad time frame of "active employment." Certainly, someone such as Harte who was actually receiving compensation for his medical condition through Bethlehem's long term disability program could think that he had suffered a "compensable disability."[8] There is a genuine issue of material fact as to whether the phrase is susceptible of multiple reasonable interpretations.

Of course, this phrase cannot be read in a vacuum, and it is possible that Bethlehem will present evidence at trial that will demonstrate that in the context of employment with that company, it was not reasonable to expect that the phrase would be differently interpreted. However, construing the facts in the light most favorable to Harte, as we must at this juncture, we conclude that the phrase was susceptible to at least two reasonable interpretations, one of which would cover someone like Harte, who was receiving compensation through long term disability benefits.

As to the detrimental reliance question, Bethlehem argues that there is insufficient evidence that Harte relied on his misinterpretation of the plan. Therefore, the argument continues, since no harm flowed from the failure of communication, the failure to notify should not be actionable. Harte counters that had he learned of his severance, either immediately or within a short time afterwards, he would have taken several steps. He submits

_____

8. Harte also claims that his illness was due in part to the stress of work, and adduced evidence that his doctor, at the time he left Bethlehem, concurred in this view. This evidence adds weight to his claim that he reasonably believed that his disability was "incurred during the course of his employment."

13

that he could have gone back to work for nineteen days and then attempted to join those days to his previous fourteen odd years (as the plan allows), or, alternatively, he could have applied for different pensions or invested in separate insurance. Although Harte has not put evidence in the record of alternate pensions for which he could have applied, we believe that he could have at least attempted to return to work.

Bethlehem notes that he had no absolute right to return to work, and that Harte was physically infirm and incapable of working according to his own physician. However, just as we cannot assume that Bethlehem would have accepted a petition for such a brief tour of duty, we similarly cannot assume that it would not have. Harte had cardiac troubles, and now claims that he has Parkinson's disease. Although these disabilities may be incompatible with long term labor, Harte might have been able to put in a few weeks of consulting (his work did not require heavy labor) to achieve his desired pension, and Bethlehem might have accommodated him. Moreover, as noted above, Harte could have sought out alternate sources of insurance. We are satisfied that although Harte had no absolute right to return to work and possibly lacked the ability to do so, a reasonable jury could conclude, even on this spare record, that had he known that he was no longer receiving credit for "continuous service" he could have acted in a way to protect himself.[9] Now, eight years later, his physical condition may have deteriorated such that he can no longer obtain the protections he might previously have sought.

_____

9. Bethlehem also argues that even if it had a duty to notify Harte, it would not apply to the moment of discharge, but rather, as is its policy, "within a reasonable period following a break in service." Therefore, "[t]he
date on which Plaintiff received a Notice of Deferred Vested Pension could not possibly alter the benefits to which he is entitled under the Plan." However, Bethlehem's internal policy of notification does not circumscribe its fiduciary duties under ERISA. If ERISA requires that fiduciaries notify individuals of ambiguities in plan documents if they might reasonably be respected to rely, to their detriment, on an incorrect reading of an ambiguity, a company may not avoid this duty by establishing a lesser reporting requirement for itself.

14

It may seem that any one who was away from the company as long as Harte was would have to know that they had been severed. But Harte continued to receive long term disability payments, and considered himself a disabled employee, instead of a disabled ex-employee. In sum, we believe that a jury could conclude that Harte was not even on constructive notice of Bethlehem's policy of interpreting the plan provision, or of his own severance.

In view of the foregoing, the judgment with respect to the claim for a breach of fiduciary duty for failure to notify will be vacated, and the case remanded to the District Court for further proceedings. In all other respects the judgment will be affirmed. Parties to bear their own costs.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit