# United States Court of Appeals
## For the First Circuit

No. 01-1203

NANCY BARRS,

Plaintiff, Appellant,

v.

LOCKHEED MARTIN CORPORATION
(a/k/a LORAL WESTERN DEVELOPMENT LABS),
and JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya and Lipez, Circuit Judges.

Michael J. Traft with whom Carney & Bassil, P.C. and Donald Peter Welch were on brief for appellant.
Jean M. Kelley with whom Morrison, Mahoney & Miller, LLP was on brief for appellee Lockheed Martin Corporation.
Edward S. Rooney, Jr. with whom Eckert Seamans Cherin & Mellott, LLC was on brief for appellee John Hancock Mutual Life Insurance Company.

April 24, 2002

BOUDIN, Chief Judge. We are asked principally to determine whether the plaintiff-appellant, Nancy Barrs, was entitled under ERISA, 29 U.S.C. § 1001 et seq. (1994), to notice of certain changes made by her ex-husband, James Barrs, to two life insurance policies maintained by him through his employer, Ford Aerospace Communications Corp. ("Ford"). Ford eventually became part of defendant-appellee Lockheed Martin ("Lockheed"). The facts are undisputed except as otherwise indicated.

Pursuant to a separation agreement executed by the Barrses in September 1989 and adopted by Maryland court decree in December 1989, James Barrs promised to make Nancy Barrs the irrevocable beneficiary of all of his then-existing life insurance policies. Included in the list of policies were a basic policy and an optional policy issued by defendant-appellee John Hancock Mutual Life Insurance Company ("Hancock") and administered by Ford as part of its employee benefits plan. The decree also required James Barrs to make all premium payments on both policies.

In February 1990, the Barrses informed Ford of the decree and executed a document provided by Ford which assigned to Nancy Barrs the absolute right to designate the beneficiary under both policies. On February 28, 1990, Ford acknowledged receipt of the assignment and returned a copy to Nancy Barrs at her existing Maryland address with a letter stating that her husband's file had been "flagged for this information" and promising to notify her "within 24 hours by registered mail" if his employment was terminated. Hancock later endorsed the assignment, and Nancy Barrs

then sent Hancock a form designating herself as primary beneficiary of both policies.

Loral Western Development Labs ("Loral") acquired Ford in October 1990 and replaced the previous Hancock policies with new Hancock basic and optional policies issued to Loral, which retained the status of all irrevocable assignees under the old policies. Then, in January 1992, Loral replaced the Hancock optional policy with one offered by Connecticut General Life Insurance Company ("CIGNA") while retaining the Hancock basic policy. James Barrs, as a plan participant, received notice of the change; he then applied for the new CIGNA policy, designating his then-fiancee Elaine as beneficiary. No notice of the change in policy or the new beneficiary designation was sent to Nancy Barrs.

James Barrs was terminated from Loral on January 29, 1993. Upon his termination, he opted to continue the CIGNA optional policy with Elaine (now his wife) as beneficiary but declined to continue the Hancock basic policy. The next business day, February 1, 1993, Loral sent to Nancy Barrs' Maryland address a letter notifying her of her former husband's termination and indicating that she could convert the Hancock basic policy to an individual policy within 31 days. The letter was sent by certified mail (rather than registered mail as promised in the February 28, 1990, letter); in any event, Nancy Barrs never received the letter because she had moved to Florida in June 1990.

Nancy Barrs did not discover that her former husband had been terminated until a conversation with her daughter nearly two

-3-

months later, in March 1993. When Nancy Barrs confronted James Barrs about the policies, he falsely assured her that he had continued both policies and kept her as the beneficiary. Relying on these assurances, Nancy Barrs did not seek to verify the status of either policy with either Loral or Hancock until after James Barrs' death on April 2, 1994. Only then did she discover that the Hancock optional policy had been replaced by the CIGNA policy listing Elaine Barrs as the beneficiary and that the Hancock basic policy had not been continued after James Barrs' termination.

In April 1997, Nancy Barrs brought suit in federal court in Massachusetts against both Hancock and Loral; Loral merged into Lockheed, which has assumed the defense of the case. Excluding counts later dropped, Nancy Barrs' complaint sought payment of benefits under both policies, 29 U.S.C. § 1132(a)(1)(B); damages for failure to provide requested plan information, id. § 1132(c); and equitable redress for defendants' breach of their fiduciary duty, id. § 1132(a)(3). In rulings unchallenged on appeal, the district court granted summary judgment to Hancock and Lockheed on the first two claims.[1]

The district court also held that Nancy Barrs' fiduciary breach claim against Hancock was precluded because she had an

---

[1]The district court held that the denial of benefits claim did not run against Lockheed as an employer and that Hancock was not liable because the Hancock basic policy issued to James Barrs had lapsed and its optional policy had been superceded by the CIGNA policy. The court also found that the claim for failure to provide information was only applicable to Lockheed, the plan administrator, but that Lockheed was not liable because Nancy Barrs had never made a request for information.

express remedy against Hancock for denial of benefits under 29 U.S.C. § 1132(a)(1)(B).[2] Nancy Barrs does not contest this ruling in her initial brief on appeal, instead arguing only that Hancock is liable as a co-fiduciary, see id. § 1105. We need not deal with this claim given Nancy Barrs' failure to address the district court's independent and sufficient ground for barring the fiduciary duty claim against Hancock. See Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 10 (1st Cir. 2001).

This left open Nancy Barrs' claim for breach of fiduciary duty against Lockheed based on its failure to notify her when the Hancock optional policy was replaced by the CIGNA policy and, separately, its failure to assure her receipt of notice of her husband's termination. On summary judgment, the district court held that Lockheed had no obligation to provide Nancy Barrs with notice of either event, beyond its affirmative promise in the February 28, 1990, letter. After a bench trial, it held that the company had substantially fulfilled this promise by its certified mailing to Nancy Barrs' Maryland address.

Nancy Barrs now appeals, challenging the district court's ruling on both of her fiduciary obligation claims against Lockheed and on her claim that the company did not comply with its promise to notify her by registered mail.[3] Further, she contests the

---

[2]See Varity Corp. v. Howe, 516 U.S. 489, 515 (1996); Larocca v. Borden, Inc., 276 F.3d 22, 28-29 (1st Cir. 2002); Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997).

[3]In a new argument, Barrs briefly claims that Lockheed breached its fiduciary duty by not preventing her husband from designating Elaine, his new wife, as beneficiary under the CIGNA

district court's finding at the bench trial that the company did not receive a change of address card. We review _de novo_ the district court's determinations on summary judgment; its factual findings at the bench trial are reviewed under the clearly erroneous standard. Nat'l Educ. Ass'n--R.I. v. Ret. Bd. of the R.I. Employees' Ret. System, 172 F.3d 22, 26 (1st Cir. 1999).

The optional policy. Nancy Barrs first argues that Lockheed had a fiduciary duty to inform her of the substitution of the CIGNA optional policy for the Hancock optional policy. The CIGNA policy was not covered by the divorce decree or the assignment form, so Lockheed's change in policy effectively eliminated any rights she had as an assignee-beneficiary of the Hancock policy. Nancy Barrs argues, on several different theories, that as an assignee-beneficiary she had the same right as her husband, the plan participant, to be informed of a change that could result in her loss of benefits.

At the threshold, Lockheed argues that such a claim is not permitted by the enforcement provision invoked by Nancy Barrs, namely, 29 U.S.C. § 1132(a)(3), which allows only suits seeking "other appropriate equitable relief." Traditionally a court of equity could require a fiduciary to pay damages to repair a breach of trust. See, e.g., Scott & Fratcher, III Scott on Trusts § 199.3

---

optional policy. The argument was not advanced below and so is forfeit. Amcel Corp. v. Int'l Executive Sales, Inc., 170 F.3d 32, 35 (1st Cir. 1999). It is of doubtful merit because the assignment acknowledged by the company did not cover successor policies in general or the new CIGNA policy in particular. Cf. Carland v. Metro. Life Ins. Co., 935 F.2d 1114, 1120-21 (10th Cir.), cert. denied, 502 U.S. 1020 (1991).

(1988).  But in Mertens v. Hewitt Associates, 508 U.S. 248 (1993), the Supreme Court read the statutory phrase more narrowly as limited to forms of relief "traditionally viewed as 'equitable'" such as mandamus or injunctions and as excluding money damages. Id. at 255.

The district court said that Nancy Barrs' claim could be viewed as one for equitable reinstatement of beneficiary status, cf. Langdon v. Maryland Cas. Co., 357 F.2d 819, 821 (D.C. Cir. 1966); in the alternative, Nancy Barrs says that she is entitled to equitable restitution.  There are problems with both theories--as to the latter, see Great-West Life & Annuity Ins. Co. v. Knudson, 122 S. Ct. 708, 714-15 (2002)--but we need not definitively resolve the Mertens remedy issue.  This is so because we conclude that no breach of fiduciary duty occurred.

It is common ground that the life insurance policies at issue were part of a welfare benefit plan governed by ERISA.  29 U.S.C. § 1002(1)(A).  Lockheed, as the named administrator of the plan, is a fiduciary under ERISA.  Id. § 1102(a).  And both sides agree that Nancy Barrs has standing as a prospective beneficiary under ERISA, id. § 1002(8), to enforce whatever fiduciary duty may be owed to a beneficiary.  Id. §§ 1104, 1132(a)(3).  The disputed issue as to the optional policy is whether ERISA obligated Lockheed to inform Nancy Barrs of the replacement of the Hancock optional policy by the CIGNA policy.

In arguing that ERISA does impose such a duty, Nancy Barrs employs three different theories.  First, ERISA imposes

specified obligations on fiduciaries, mostly regarding the management of plan assets, 29 U.S.C. §§ 1101-1114, and the disclosure of <u>general</u> plan information, <u>id.</u> §§ 1021-1031.  Among the latter is a requirement that the plan administrator publish within a specified period "all modifications and changes" to the plan "to each participant, and each beneficiary receiving benefits under the plan."  <u>Id.</u> § 1024(b)(1).  Nancy Barrs briefly argues that this last provision entitled her to notice of the switch from Hancock to CIGNA.

It does not.  Nancy Barrs was not "receiving benefits" at the time of the change, and so section 1024(b)(1) does not appear to apply to her.  In any event, the Department of Labor has power under 29 U.S.C. § 1024(a)(3) to exempt welfare benefit plans--as opposed to pension plans--from section 1024(b)(1)'s reporting and disclosure requirements, and it has by regulation made the requirement inapplicable to beneficiaries under welfare benefit plans.  29 C.F.R. § 2520.104b-1(a) & (b) (2001).

Nancy Barrs next argues in her brief that, even without a specific ERISA directive, plan administrators have a general fiduciary obligation to "communicate facts affecting the interest of a beneficiary which the fiduciary knows the beneficiary does not know and which the beneficiary needs to know in order to protect her interest."  Specifically, she contends that the obvious intent of the divorce decree was to maintain her interest in her husband's life insurance, and thus Lockheed had to notify her as an assignee-

beneficiary of events that eliminated her benefits under an existing policy. This is the central issue in this case.

ERISA's specific statutory duties are not meant to be exhaustive of a fiduciary's obligations; federal courts are expected to flesh out ERISA's general fiduciary duty clause, 29 U.S.C. § 1104(a). Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 24, n.26 (1983). This exercise takes account of traditional trust law but necessarily adapts it to conform with ERISA's specific provisions and underlying purpose. Varity Corp., 516 U.S. at 497; Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-12 (1989).

If this case involved a traditional trustee responsible for managing the financial interests of an individual beneficiary, Nancy Barrs' demand for personalized information would have some basis. See Restatement (Second) of Trusts § 173 cmt. d (1959). However, under ERISA the administrator is not a personal trustee but rather a fiduciary for the limited purpose of overseeing whatever plan it creates for what may be thousands of employees and other beneficiaries. See 29 U.S.C. § 1002(21)(A)(iii). Ordinary trust principles cannot be transferred wholesale, and, where ERISA itself specifies a notice requirement, courts must be especially cautious in creating additional ones.[4]

---

[4] See Pegram v. Herdrich, 530 U.S. 211, 225-26 (2000); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998); Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 985-86 (8th Cir. 1992), cert. denied, 506 U.S. 1080 (1993).

Absent a promise or misrepresentation, the courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances.[5]  This view reflects ERISA's focus on limited and general reporting and disclosure requirements, 29 U.S.C. §§ 1021, 1022, 1024, and also reflects the enormous burdens an obligation to proffer individualized advice would inflict on plan administrators. In general, increased burdens necessarily increase costs, discourage employers from offering plans, and reduce benefits to employees.  See Varity Corp., 516 U.S. at 497; Mertens, 508 U.S. at 262-63.

Our case illustrates the point.  All Lockheed knew was that Nancy Barrs was the irrevocable beneficiary under the existing Hancock optional policy.  The implication of her position is that when the company decided for business reasons to adopt the

---

[5]Electro-Mech. Corp. v. Ogan, 9 F.3d 445, 451-52 (6th Cir. 1993); Maxa, 972 F.2d at 985; Stahl v. Tony's Bldg. Materials, Inc., 875 F.2d 1404, 1409-10 (9th Cir. 1989); Cummings v. Briggs & Stratton Ret. Plan, 797 F.2d 383, 387 (7th Cir.), cert. denied, 479 U.S. 1008 (1986); Childers v. Northwest Airlines, Inc., 688 F. Supp. 1357, 1361-62 (D. Minn. 1988); Lee v. Union Elec. Co., 606 F. Supp. 316, 321 (E.D. Mo. 1985); Allen v. Atlantic Richfield Ret. Plan, 480 F. Supp. 848, 850-51 (E.D. Pa. 1979), aff'd, 633 F.2d 209 (3d Cir. 1980); Hopkins v. FMC Corp., 535 F. Supp. 235, 239 (W.D.N.C. 1982).  See also Jorden, Pflepsen & Goldberg, ERISA Litigation Handbook § 5.02[A][4] (Supp. 2001).  Cf. Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993) (once specific request is made, fiduciary may have duty to convey material information beyond the specific scope of the request); Eddy v. Colonial Life Ins. Co. of Am., 919 F.2d 747, 750 (D.C. Cir. 1990) (same).  But cf. Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1180-82 (3d Cir. 1996) (stock broker had duty to give material information to a small number of beneficiary pension funds).

substitute CIGNA policy, it had to look in each employee's file, look at any assignments that were made (which in Nancy Barrs' case did not cover substitute policies), look further to the underlying divorce decree (which also did not cover substitute policies), and then surmise that Nancy Barrs might want to seek to reform the decree to reach successor policies.

Finally, Nancy Barrs argues that a special fiduciary obligation can be derived from provisions added to ERISA in 1984 giving special status to so-called "qualified domestic relations orders" (QDROs). <u>See</u> Retirement Equity Act of 1984, Pub. L. No. 98-397 § 303(d), 98 Stat. 1426 (1984). Prior to the amendments, ERISA provided for a general ban on assignment of <u>pension</u> plan rights, Pub. L. No. 93-406, § 206(d), 88 Stat. 829 (1974); and while there was no corresponding ban on assignment of welfare plan benefits, ERISA's broad preemption of all state laws that "relate to any employee benefit plan," <u>id.</u> § 1144(a), created uncertainty about how far state-law contracts or decrees assigning ERISA benefits would be given effect.[6]

The amendments eliminated both obstacles for assignments of plan benefit rights that meet the substantive and procedural requirements for a valid QDRO, <u>see</u> 29 U.S.C. § 1056(d)(3)(B)-(E). Such orders are made an exception to the anti-assignment provision covering pension plan benefits, <u>id.</u> § 1056(d)(3)(A), and they are

_____

[6]<u>See</u> <u>Mackey</u> v. <u>Lanier Collection Agency & Serv., Inc.</u>, 486 U.S. 825, 838 & n.13 (1988); <u>Metro. Life Ins. Co.</u> v. <u>Wheaton</u>, 42 F.3d 1080, 1082-83 (7th Cir. 1994); S. Rep. No. 98-575 (1984), at 18-19, <u>reprinted in</u> 1984 U.S.C.C.A.N. 2547, 2564-65.

-11-

exempted from the general preemption section that has been the basis of court rulings broadly preempting state-law assignments of benefits, id. § 1144(b)(7). Boggs v. Boggs, 520 U.S. 833, 841 (1997); Mackey, 486 U.S. at 838; S. Rep. No. 98-575, supra, at 3, 19, reprinted in 1984 U.S.C.C.A.N. at 2549, 2565.[7]

A beneficiary named in a state decree assigning pension plan benefits (called an "alternate payee") is entitled to be notified of the company's procedures for determining whether the decree is qualified and its ultimate decision as to qualification. 29 U.S.C. § 1056(d)(3)(G). Taken literally, these provisions do not apply to assignees of welfare plan benefits in light of a subsequent provision making the entire paragraph establishing plan duties relating to QDROs inapplicable to plans not subject to the anti-assignment provision, which is limited to pension plans. Id. § 1056(d)(3)(L).

Nevertheless, assuming these QDRO notice provisions do apply, cf. note 7, above, nothing in them or in any precedent cited to us imposes any general fiduciary obligation on the plan administrator to provide personalized information or advice. In

_____

[7]Unlike the exception to the assignment ban, the exception to the preemption provision is not literally limited to pension plans. Although there is some doubt based on legislative history whether Congress intended to address welfare benefit plans at all in the 1984 amendments, see S. Rep. No. 98-575, supra, at 18-19, reprinted in 1984 U.S.C.C.A.N. at 2564-65; H. Rep. No. 98-655, pt. 1, at 42 (1984), four circuits have held based on language and policy that QDROs assigning welfare benefits are also not preempted. Metro. Life Ins. Co. v. Pettit, 164 F.3d 857, 863 n.5 (4th Cir. 1998); Metro. Life Ins. Co. v. Marsh, 119 F.3d 415, 421 (6th Cir. 1997); Wheaton, 42 F.3d at 1082-84; Carland, 935 F.2d at 1119-20. Although the issue is not squarely presented in our case, we see no obvious reason why we would depart from the prevailing view.

general, a QDRO beneficiary is simply entitled to be paid in accordance with the decree, 29 U.S.C. § 1056(d)(3)(A), and to be treated as an ERISA beneficiary like any other, id. § 1056(d)(3)(J). Nothing suggests that QDRO beneficiaries were being given broader protection than those beneficiaries who were already protected by the pre-amendment ERISA statute.

In our case, the QDRO entitled Nancy Barrs to be treated as the beneficiary of whatever payments were due under the covered policies. However, under the Hancock optional policy, none were due to anyone: that policy had been superceded by the CIGNA policy which was not named in the QDRO; nor was Nancy Barrs the beneficiary. (Similarly, none were due under the basic policy, since her former husband as policyholder had allowed the policy to lapse on his termination.) In short, the assignments as to the named policies were respected, which is all the QDRO required; the problem lay in other contingencies for which no adequate provision had been made.

It is easy to be wise after the fact: presumably if Nancy Barrs' matrimonial lawyer faced the same problem again, he or she would include in the settlement agreement a provision covering successor policies.[8] Arranging for effective notification as to key events (e.g., termination, nonpayment of premiums) would be more difficult, since it would probably require cooperation from

---

[8]We intimate no view as to whether an assignment covering unspecified future policies would meet the statutory requirements for a QDRO, see 29 U.S.C. § 1056(d)(3)(C)(iv), and if not, whether it would be enforceable.

-13-

the plan administrator as well as imaginative drafting. In default of such protection, regular inquiries by the beneficiary to the company and insurer would probably be necessary.

Yet these are the commonplace problems of contracts in general and divorce agreements in particular. Imagine that there were no ERISA plan but simply a divorce decree requiring that James Barrs maintain in force a life insurance policy for the benefit of Nancy Barrs. Assuring compliance would require Nancy Barrs to guard against the very same threats of lapses in the policy, change of beneficiary, and against dishonest replies from the obligated husband. ERISA simply does not provide insurance against such risks.

The basic policy. With respect to the basic policy, the problem for Nancy Barrs is not a change of beneficiary under a replacement policy but rather her husband's failure to continue paying premiums after his termination by the company. Nancy Barrs says that she should have been assured notice of this termination. Insofar as this claim rests on a general fiduciary duty independent of the company's specific promise, our prior discussion as to why no affirmative obligation existed covers the basic policy as well.

However, in its February 28, 1990, letter to Nancy Barrs acknowledging her divorce decree, Ford promised to notify her "within 24 hours by registered mail" if her husband was terminated.[9] Nancy Barrs claims that Lockheed failed to keep this

_____

[9]Nancy Barrs also asserts that in a conversation on or around February 28, 1990, Joseph Wilson, a Lockheed human resources supervisor, promised to "protect her rights and notify her in

-14-

inherited promise and this caused her to forfeit her benefits under the Hancock basic policy. Both sides assume that through this letter, Lockheed assumed a specific fiduciary obligation enforceable under ERISA. Where the employer makes a specific commitment to notify a beneficiary about a specific event relating to plan benefits, it is at least arguable that the employer breaches its fiduciary duty if it fails to do so. See Varity Corp., 516 U.S. at 506; Cleary v. Graphic Communications Int'l Union Supplemental Ret. & Disability Fund, 841 F.2d 444, 447-49 (1st Cir. 1988). We accept this undisputed premise for purposes of the present case.

The district court found after a bench trial that Lockheed had probably sent the notice by certified rather than registered mail, but in either event without a return receipt requested. The notice never reached Nancy Barrs because it was sent to her old address in Maryland, which appeared in the company's records. The district court credited Nancy Barrs' testimony that she had sent Lockheed a change of address postcard, and the court afforded her the common law presumption that the card was received. See Hagner v. United States, 285 U.S. 427, 430 (1932); Rosenthal v. Walker, 111 U.S. 185, 193 (1884).

However, the district court also heard testimony by the Lockheed employee responsible for James Barrs' file throughout the

writing if James Barrs sought to change the beneficiary." Wilson testified at trial that he had no recollection of this conversation. The district court supportably found this to be no more than an assurance that Lockheed would prevent James Barrs from designating a new beneficiary under the covered policy.

relevant period (Gail Versak), and it believed Versak's assertion that the postcard was never received.  This determination was not clearly erroneous.  Fed. R. Civ. P. 52(a).  And, if Versak's testimony is accepted, it overcomes the rebuttable presumption that the properly mailed document was actually received.  In re Yoder Co., 758 F.2d 1114, 1118 (6th Cir. 1985).

Nancy Barrs argues that a simple denial by the addressee should never be enough to override the presumption of receipt.  But Lockheed did not offer merely a bald denial of receipt; it provided a witness, in a position to know, who offered direct testimony that the postcard had not been received and could be cross-examined on any relevant points (e.g., that the notice might have gone astray inside the company).  To demand much more would elevate the presumption into one that is effectively not rebuttable--which would hardly be justified by common experience with the postal system.[10]  Of course, the denial of receipt raises a question of witness veracity; but so does the claim of mailing.

Alternatively, Nancy Barrs says that Lockheed breached its commitment by sending the notice by certified rather than registered mail.  The district court rejected the claim on the premise that registered and certified mail are essentially the same

---

[10]In a divided decision, the Ninth Circuit did demand something more, namely, that in addition to the denial the witness provide testimony as to, inter alia, the operation of the mailroom and the procedures for receiving, sorting and distributing mail.  Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 964 (9th Cir. 2001).  There appears to be little precedent for this kind of tailoring; in our view, such subjects are fair game for cross-examination (or independent evidence by the party asserting that notice was given) but do not justify an appellate directive.

in that neither automatically includes a return receipt.  In fact, registered mail, unlike certified mail, includes a notice of non-delivery as part of the service; but as to both "return receipt" is a separately purchased service.  See 39 C.F.R. Pt. 3001, Subpt. C, App. A, §§ 941-42 (2001).  Had Lockheed sent the notice by registered mail, it would simply have been told by the Postal Service that it was not deliverable to Nancy Barrs at her Maryland address.[11]

Nancy Barrs says that the company's promise to use registered mail was essentially a promise to ensure actual delivery since that was her objective in specifying the method to be used. This confuses her objective with the company's commitment:  the company did not promise that she would receive notice--she could have asked for that--but only that it would use registered mail to send the notice.

Nancy Barrs could have, but has not, argued that the failure to use registered mail caused her injury on a different theory, to wit, that registered mail entails a notice of non-delivery and that the company would actually have been prompted by such a notice to seek out her new address. But apart from the fact that this argument has not been made, no evidence exists that the company would have made this effort.  Further, the only obvious

---

[11]Registered mail provides for insurance and is commonly used for mailing valuable goods; it is described by the Postal Service as its most secure service.  39 C.F.R. Pt. 3001, Subpt. C, App. A, § 942.41 (2001).  Perhaps use of registered as opposed to certified mail would have provided greater assurance that the letter would not be mishandled or lost, but here the obvious problem was the outdated address for Nancy Barrs in the company records.

-17-

source of a new address was Nancy Barrs' ex-husband, and there is no reason to think that he would have cooperated, given his own adverse interest and history of deceit.

For obvious reasons, it is commonly the burden of a party seeking notification to assure that an up-to-date address is provided to the party obligated to make notification. Nancy Barrs could have called the company to assure that her postcard had been received; or she could initially have requested notification be made separately to her and to her matrimonial lawyer at their respective addresses. Cf. 29 U.S.C. § 1056(d)(3)(G)(ii)(III) (allowing a QDRO beneficiary to require such double notification). She took neither step.

Ironically, even if she had received notice, there is some doubt whether her injury would have been prevented. When Nancy Barrs finally found out in March 1993 about her former husband's termination, she relied on his assurances that the policies were paid up and that she was still listed as the beneficiary. It is unclear why she would have acted differently had she known two months earlier. However this may be, the company did send notice and, given that the address had not been updated, the use of certified rather than registered mail made no difference.

Affirmed.

-18-