SUN LIFE ASSURANCE COMPANY
OF CANADA, Plaintiff,

v.

Mary Anne SULLIVAN, Mary Elizabeth Sullivan, Sally Jean Kruger, Defendants.

No. CIV.A. 200012419RBC[1].

United States District Court,
D. Massachusetts.

June 25, 2002.

Siobhan M. Sweeney, Schwartz, Shaw & Griffith, Boston, MA, for Sun Life Assurance Co. of Canada, Inc., Plaintiff.

Susan J. Cutelis, Kurland & Grossman, Chelmsford, MA, Jeffrey N. Moxon, Moxon & Devaney, Newton Centre, MA, for Mary Anne Sullivan, Mary Elizabeth Sullivan, Defendants.

### MEMORANDUM AND ORDER ON MOTION OF DEFENDANT MARY ANN SULLIVAN FOR SUMMARY JUDGMENT (# 33)

COLLINGS, United States Magistrate Judge.

### I. Introduction

Thomas William Sullivan (hereinafter "Thomas") died on July 29, 2000, having left his then girlfriend, defendant Sally Jean Kruger (hereinafter "Sally Jean"), and daughter, defendant Mary Elizabeth Sullivan (hereinafter "Mary Beth"), as beneficiaries of his life insurance policy. Thomas obtained the policy as part of a welfare benefit plan that was administered by his employer, Townsend Oil Co. This

---

1. With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgement, pursuant to 28 U.S.C. § 636(c).

policy was issued by plaintiff, Sun Life Assurance Company of Canada (hereinafter "Sun Life"). Sun Life received notice from both Sally Jean and Thomas' ex-wife, defendant Mary Anne Sullivan (hereinafter "Mary Anne"), in August of 2000, each claiming that they were legally entitled to the life insurance proceeds. As a result of these competing claims, Sun Life brought an action of interpleader against Sally Jean, Mary Beth, and Mary Anne to determine who is legally entitled to receive the proceeds.

To recap briefly the significant procedural history of this litigation to date, on November 22, 2000, Sun Life instituted the instant action (# 1). On March 26, 2001, Sun Life filed a motion seeking summary judgment on the grounds that the insurance company was "a mere disinterested stakeholder which seeks to have competing claims to life insurance determined by this court." (# 11 at 9) Roughly three months thereafter, on June 26, 2001, Sun Life was granted summary judgment and, upon depositing the proceeds of the insurance policy with the Court, it was thus completely and totally discharged. (# 24)

The motion for summary judgment (# 33) now at hand was filed by Mary Anne on February 22, 2002. Summarizing the motion, Mary Anne argues that Thomas had an obligation to her as part of a divorce agreement to maintain a policy of insurance on his life in the amount of $150,000.00. Thomas failed to keep such a policy and instead designated Sally Jean and Mary Beth as the beneficiaries of the policy he received through his employer. Mary Anne contends that there is no factual dispute regarding Thomas' obligation to have maintained this insurance for her. Therefore, Mary Anne claims she is entitled to the portion of the proceeds that Thomas improperly assigned to Sally Jean. Mary Anne also asserts that she is entitled to Mary Beth's share of the life insurance proceeds due to the fact that Mary Beth filed a response to the complaint (# 7) indicating that she had no objection to Sun Life paying over to Mary Anne her portion of the proceeds. Sally Jean opposes the motion (# 37) and, at this junction, the issues are ripe for decision.

## II. The Facts

Thomas and Mary Anne were divorced by a judgment of the Superior Court in Hartford, Connecticut on April 25, 1985. (Memorandum of Law and Fact in Support of Defendant Mary Anne Sullivan's Motion for Summary Judgment # 35, Exh. A at 1) The divorce agreement required that Thomas pay alimony to Mary Anne for a period of 15 years following the divorce, in amounts that increased from $1,000.00 per month at the time of divorce to $2,500.00 per month by the end of the agreement. (# 35, Exh. A at 3) The agreement also called for Thomas to maintain $150,000.00 of "his group life insurance" for the benefit of Mary Anne for as long as he had an obligation to her. (# 35, Exh. A at 4).

On December 18, 1997, Mary Anne filed a complaint with the Barnstable Probate Division for outstanding alimony payments owed to her by Thomas. (# 35, Exh. B) On July 2, 1998, the Barnstable Probate Division determined that Thomas was in arrears in the amount of $184,238.00 and that he should begin to make payments of $1,000.00 a month. (# 35, Exh. B).

On December 7, 1999, six days after Thomas began employment at Townsend Oil Co., Thomas enrolled in the company's life insurance plan. (# 35, Exh. C) Thomas named Sally Jean and Mary Beth as primary beneficiaries of the insurance policy, each to receive a 50% share of the proceeds. (# 35, Exh. C) Thomas subsequently died on July 29, 2000. (# 11, Exh. A(3)).

At the time of Thomas' death, the life insurance policy had a value of $100,000.00. (# 11, Exh. A(1) at 3) On August 15, 2000, Sally Jean submitted a claim to Sun Life for her share of the proceeds. (# 11, Exh. A(4)) Mary Anne also contacted Sun Life on August 15, 2000, stating that she believed she was entitled to all of the life insurance proceeds as a result of Thomas' alimony obligation to her. (# 11, Exh. A(5)) On December 28, 2000, Mary Beth filed a letter in which she waived all objections to Sun Life distributing to her mother, Mary Anne, the $50,000.00 Thomas had designated to her. (# 7).

This factual recitation is adequate to set the stage. Further facts shall be added during the course of the discussion as necessary.

### III. The Summary Judgment Standard

Summary judgment is "a device that 'has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways.'" *Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir.1999) (quoting *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991)). The party moving for summary judgment "bears the initial burden, which may be discharged by pointing to the absence of adequate evidence supporting the nonmoving party's case." *Michelson v. Digital Financial Services*, 167 F.3d 715, 720 (1st Cir.1999). After the moving party has met its burden, "the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Michelson*, 167 F.3d at 720. When considering whether to grant summary judgment, the Court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the Court must "accept all reasonable inferences favorable to the nonmovant." *Mullin*, 164 F.3d at 698; see also *Feliciano v. State of Rhode Island*, 160 F.3d 780, 788 (1 Cir., 1998); *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998); *Dykes v. DePuy, Inc.*, 140 F.3d 31, 33 (1 Cir., 1998).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine," the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; see also *Fajardo Shopping Center, S.E., v. Sun Alliance Insurance Company of Puerto Rico, Inc.*, 167 F.3d 1, 7 (1 Cir., 1999) ("[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party"); *De-Jesus–Adorno v. Browning Ferris of Puerto Rico*, 160 F.3d 839, 841–42 (1 Cir., 1998) ("A trialworthy issue exists ... [if] the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'"); *Feliciano*, 160 F.3d at 784; *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 158 (1 Cir., 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; see also *De-Jesus–Adorno*, 160 F.3d at

841–42 ("A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law"); *Fajardo Shopping Center*, 167 F.3d at 7 (citing *Pagano v. Frank*, 983 F.2d 343, 347 (1 Cir., 1993)). "Thus the substantive law defines which facts are material." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1 Cir., 1996). (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505).

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. See *Mullin*, 164 F.3d at 698 (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1 Cir., 1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)) ("Its essential role is to 'pierce the boilerplate of the pleadings and assay the parties proof in order to determine whether trial is actually required.' "). Rather, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV.  Discussion

There can be no doubt that Thomas' life insurance policy was an element of a welfare benefit plan provided by Townsend Oil Co. that is governed by ERISA. Sun Life alleged ERISA as the jurisdictional basis for its complaint, and relied on that body of law in its memorandum in support of its summary judgment motion. (Memorandum of Law and Fact in Support of the Plaintiff's Motion for Summary Judgment and for Complete and Total Discharge # 11) In her answer to the complaint, Mary Anne did not deny the applicability of ERISA, but rather averred that she had insufficient information to form a belief as to the truth of the allegation that Townsend Oil Co.'s welfare benefit plan is governed by ERISA. (Answer of Defendant Mary Anne Sullivan # 6 at 1). ERISA defines an employee welfare benefit plan as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . death.

Title 29 U.S.C. § 1002(1).

Townsend Oil Co.'s welfare benefit plan clearly meets the definition and thus is governed by ERISA.

Consequent to the terms of her divorce decree, Mary Anne contends that she is entitled to that portion of Thomas' life insurance proceeds allocated to Sally Jean in the amount of $50,000.00. However, the case upon which Mary Anne relies does not support this proposition. See *L.W.K. v. E.R.C.*, 432 Mass. 438, 735 N.E.2d 359 (2000). L.W.K. is a case which addresses the payment of child support and the holding was based on state inter vivos trust law. As previously stated, the case now before the Court is governed by ERISA.

The issue to be decided is whether a state divorce agreement trumps the federal statute. ERISA states that its provisions "shall supersede any and all State law insofar as they may now or hereafter relate to any employee benefit plan." Title 29 U.S.C. § 1144(a). The Supreme Court has explained that a state

law shall "relate to" an employee benefit plan "if it has a connection with or references to such a plan." *Mackey v. Lanier Collection Agency & Serv. Inc.*, 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Moreover, it has been held by a number of circuits that designating a beneficiary of an ERISA plan has connections with or references to that plan, thereby preempting state law. *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 420 (6 Cir., 1997) (citing *McMillan v. Parrott*, 913 F.2d 310, 311 (6 Cir., 1990); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5 Cir., 1994); *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 14–15 (2 Cir., 1993); *Metro. Life Ins. Co. v. Hanslip*, 939 F.2d 904, 906 (10th Cir.1991); *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1196 (11 Cir., 1991); *MacLean v. Ford Motor Co.*, 831 F.2d 723, 727–28 (7 Cir., 1987)). Title 29 U.S.C. 1104(a)(1)(D) provides the rule of law for determining the beneficiary under ERISA, stating that a fiduciary will discharge his duties "in accordance with the documents and instruments governing the plan."

That having been said, however, under certain amendments made to ERISA by the Retirement Equity Act of 1984, when a claimant has a valid "qualified domestic relations order" ("QDRO"), that QDRO will be exempted from ERISA's preemption of state law. *Nancy Barrs v. Lockheed Martin Corporation*, 287 F.3d 202, 208–09 and n. 7 (1 Cir., 2002).[2] A QDRO is defined as any judgment, decree, or order which is made pursuant to a state domestic relations law and "assigns to an alternate payee the right to...receive all or a portion of the benefits payable with respect to a participant under a plan." Title 29 U.S.C. § 1056(d)(3)(B)(i) and (ii). To qualify as a QDRO, the order must "clearly specify" the following four items:

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or periods to which such orders applies, and

(iv) each plan to which such order applies.

Title 29 U.S.C. § 1056(d)(3)(C)(i)-(iv).

The divorce agreement in this case does not meet the requirements of a QDRO due to the fact that it fails to "clearly specify" a welfare benefit plan. The divorce agreement between Mary Anne and Thomas simply states "of his group life insurance."

Other circuits have used an "ambiguity" standard to determine whether the plan name has been stated with enough specificity to meet the QDRO requirement. See, e.g., *Marsh*, 119 F.3d at 422; *Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084 (7th Cir.1994). In large measure the facts in both Marsh and Wheaton are analogous to the facts in the case at hand. In

---

**2.** Because Thomas' insurance policy was obtained through a welfare benefit plan, there may be some question as to whether the QDRO exception provision was even applicable in this situation. The First Circuit has noted that there is some uncertainty based on the legislative history as to whether Congress intended to apply the exception provision to welfare benefit plans or limit its application to pension plans. *Barrs*, 287 F.3d at 209 n. 7. The prevailing view in a number of circuits has been that the exception provision is meant to apply to welfare benefit plans as well as pension plans. *Barrs*, 287 F.3d at 209 n. 7. Although that specific question was not at issue in Barrs the Court noted that it saw no reason to depart from the prevailing view. *Barrs*, 287 F.3d at 209 n. 7.

both of those cases, the decedent obtained a life insurance policy through his employer's welfare benefit plan which was governed by ERISA. *Marsh*, 119 F.3d at 416–19; *Wheaton*, 42 F.3d at 1081–82. Upon the decedents' deaths, the decedents' children and widows, who was listed as the beneficiaries of the policy, laid claim to the proceeds. *Marsh*, 119 F.3d at 416–17; *Wheaton*, 42 F.3d at 1081–82. In both Marsh and Wheaton, the decedents' children contended that they were entitled to a portion of the proceeds as a result of a provision in their parents' divorce agreements which the children asserted met the requirements of a QDRO. *Marsh*, 119 F.3d at 416; *Wheaton*, 42 F.3d at 1081–82.

In Marsh, the Sixth Circuit entered a judgment for the children noting the divorce agreement met the requirements of a QDRO. *Marsh*, 119 F.3d at 416. The Court held that the divorce agreement was not ambiguous in identifying the plan/life insurance as one that is "carried through Metro Life Ins. Co. and maintained at his place of employment." *Marsh*, 119 F.3d at 422. In Wheaton, the Seventh Circuit also entered a judgment for the children, concluding once again that the divorce agreement at issue met the requirements of a QDRO. *Wheaton*, 42 F.3d at 1085. The Court decided that the divorce agreement was not too ambiguous in identifying the plan/life insurance as "the life insurance which is presently carried through his/her employer". *Wheaton*, 42 F.3d at 1084.

While it would appear that the "ambiguity" standard is not as stringent as "clearly specify", nevertheless the life insurance provision contained in Mary Anne and Thomas' divorce agreement fails to meet this standard as well. The sole identification in the terms of the divorce agreement was that

> The Husband [Thomas] shall maintain a minimum of One Hundred Fifty Thousand ($150,000.00) dollars of his group life insurance for the Wife's [Mary Anne Sullivan] benefit, naming Mary Elizabeth contingent beneficiary, so long as his alimony obligation to her continues.

Opposition # 37, Exh. 1 ¶ 7.

This description is simply inadequate to meet the "clearly specify" standard even as interpreted by the Sixth and Seventh Circuits. Granted, it would have been impossible for Mary Anne and Thomas to name the Townsend Oil Co. plan in their divorce agreement due to the fact the decree was entered in 1985 and Thomas did not start working at Townsend Oil Co. until December 1, 1999, fifteen years later. Whether the future contingency of a change in Thomas' employment could have been covered in the decree when it was entered in 1985 so as to render it a valid QDRO is an unresolved issue. In Barr, the First Circuit wrote that it "...intimate[d] no view as to whether an assignment covering unspecified future policies would meet the statutory requirements for a QDRO, see 29 U.S.C. § 1056(d)(3)(C)(iv), and if not, whether it would be enforceable." *Barrs*, 287 F.3d at 202, 209, n. 7.

But the plain fact is that the decree contained nothing more than the term "group life insurance." This is manifestly insufficient to meet the requirements of the statute no matter how liberally the statute is construed. Therefore, as a matter of law, Mary Anne is not be entitled to the insurance proceeds designated to Sally Jean because the divorce agreement does not qualify as an exception to ERISA's preemption of state law.

For the same reason, as a matter of law, Mary Anne is not entitled to the portion of the proceeds allocated to Mary Beth. Whether after receiving the proceeds, Mary Beth chooses to give her share to Mary Anne is a matter to be determined by mother and daughter, not the Court.

## V. Order

For the reasons stated, it is ORDERED that the Motion of Defendant Mary Ann Sullivan for Summary Judgment (# 33) be, and the same hereby is, DENIED.