**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-2088**

---

BENNY FITZWATER; TERRY PRATER, on behalf of themselves and others similarly situated; EMMETT CASEY, JR.; CONNIE Z. GILBERT; ALLAN H. JACK, SR.; ROBERT H. LONG,

        Plaintiffs - Appellants,

and

CLARENCE BRIGHT,

        Plaintiff,

v.

CONSOL ENERGY, INCORPORATED; CONSOLIDATION COAL COMPANY; FOLA COAL COMPANY, LLC; KURT SALVATORI; CONSOL OF KENTUCKY, INCORPORATED; CONSOL PENNSYLVANIA COAL COMPANY, LLC.,

        Defendants - Appellees,

and

CONSOL BUCHANAN MINING COMPANY, LLC,

        Defendant.

---

**No. 24-2091**

---

BENNY FITZWATER; TERRY PRATER, on behalf of themselves and others similarly situated; EMMETT CASEY, JR.; CONNIE Z. GILBERT; ALLAN H. JACK, SR.; ROBERT H. LONG; CLARENCE BRIGHT,

        Plaintiffs - Appellees,

v.

CONSOL ENERGY, INCORPORATED; CONSOLIDATION COAL COMPANY; FOLA COAL COMPANY, LLC; KURT SALVATORI; CONSOL OF KENTUCKY, INCORPORATED,

        Defendants - Appellants,

and

CONSOL BUCHANAN MINING COMPANY, LLC; CONSOL PENNSYLVANIA COAL COMPANY, LLC.,

        Defendants.

---

**No. 24-2105**

---

EMMETT CASEY, JR.; CONNIE Z. GILBERT, on behalf of themselves and others similarly situated,

        Plaintiffs - Appellants,

v.

CONSOL ENERGY, INCORPORATED; CONSOLIDATION COAL COMPANY; CONSOL BUCHANAN MINING COMPANY, LLC; KURT SALVATORI,

        Defendants - Appellees.

---

**No. 24-2106**

---

2

EMMETT CASEY, JR.; CONNIE Z. GILBERT, on behalf of themselves and others similarly situated,

        Plaintiffs - Appellees,

v.

CONSOL ENERGY, INCORPORATED; CONSOLIDATION COAL COMPANY; CONSOL BUCHANAN MINING COMPANY, LLC; KURT SALVATORI,

        Defendants - Appellants.

---

Appeals from the United States District Court for the Southern District of West Virginia, at Charleston and Bluefield.  John T. Copenhaver, Jr., Senior District Judge.  (2:16-cv-09849; 1:17-cv-03861)

---

Argued:  December 10, 2025                Decided:  March 3, 2026

---

Before WILKINSON and WYNN, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Wilkinson and Senior Judge Keenan joined.

---

**ARGUED:**  Samuel Brown Petsonk, PETSONK PLLC, Oak Hill, West Virginia, for Appellants/Cross-Appellees.  Joseph J. Torres, JENNER & BLOCK LLP, Chicago, Illinois, for Appellees/Cross-Appellants. **ON BRIEF:** Bren J. Pomponio, MOUNTAIN STATE JUSTICE, Charleston, West Virginia, for Appellants/Cross-Appellees.  Clifford W. Berlow, Alexis E. Bates, Katherine M. Funderburg, Emma J. O'Connor, JENNER & BLOCK LLP, Chicago, Illinois, for Appellees/Cross-Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

3

WYNN, Circuit Judge:

The Employee Retirement Income Security Act of 1974 ("ERISA") protects promised benefits for employees. But where an employer reserves the right to amend or terminate a welfare benefits plan, and employees are aware that the employer has done so, ERISA permits change—even when employees sincerely believe those benefits would last a lifetime.

CONSOL Energy, Inc.[1] terminated its retiree welfare benefits plan in 2015. Seven retirees sued, alleging multiple violations of ERISA stemming from the plan's termination. The district court rejected most of their claims at summary judgment and after a bench trial. But it found in favor of two of the retirees as to one of their claims. The parties cross-appealed.

After careful review, we conclude that the district court properly applied ERISA's governing principles, credited evidence where warranted, and rejected claims where the proof fell short. Because we discern no error, we affirm.

I.

A.

Plaintiffs Benny Fitzwater, Clarence Bright, Terry Prater, Emmett Casey, Jr., Connie Gilbert, Allan Jack, Sr., and Robert Long "are all retired coal miners who worked at mine sites owned by CONSOL . . . during various times between 1969 and 2014."

---

[1] CONSOL Energy, Inc. was, at various times, the parent company for a number of other coal companies, which were also named as defendants in this case. *Fitzwater v. CONSOL Energy, Inc.*, No. 1:17-cv-3861, 2024 WL 4361963, at *2 (S.D.W. Va. Sept. 30, 2024). For simplicity, we refer to the defendants collectively as CONSOL.

*Fitzwater v. CONSOL Energy, Inc.*, No. 1:17-cv-3861, 2024 WL 4361963, at *1 (S.D.W. Va. Sept. 30, 2024). CONSOL offered retiree medical and other benefits through an ERISA-covered plan. CONSOL employees became eligible for retirement benefits once they had worked for ten years and attained 55 years of age.

Throughout the time periods relevant to this case, CONSOL distributed documents to employees concerning their retirement benefits, which included reservation-of-rights clauses. The reservation-of-rights language stated, broadly, that CONSOL reserved the right to modify or terminate the relevant benefits plan at any time.

Nevertheless, Plaintiffs uniformly testified to their belief that, once they had worked for ten years and reached age 55, CONSOL would continue to provide them with retirement benefits for the rest of their lives. They believed that their benefits would persist for life because they were told as much by CONSOL. Casey, for instance, testified that he was told, "Once you reached the age of retirement, you, your wife, and your children would have medical until you deceased, and then your wife would have it until she deceased or was remarried, and your children would have it until they reached a certain age or they were employed by a company that offered healthcare, and that once you reached the age of 65, you had to sign up on Medicare. Then the CONSOL plan would be your supplemental plan." J.A. 394.[2] Jack testified that, during his orientation, he was told that "if you attained age 55, and 10 years of employment, that you could retire and you would have your

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

healthcare, which was medical, dental, eye, prescription drug, life insurance—you'd have that for life." J.A. 331.

Further, CONSOL told employees that the CONSOL-provided retirement benefits would be at least as good as the benefits provided to members of the United Mine Workers of America—the coal miners' union—which provided lifetime retirement benefits. Gilbert testified, for instance, that she was told that CONSOL's retirement benefits were as "good as the union's . . . if not better." J.A. 510. This pitch was part of CONSOL's "union avoidance" efforts: As a "double-breasted" company—that is, one with both union and non-union operations, J.A. 1173—CONSOL presented information to employees at the non-union sites espousing "the company's philosophy on maintaining union-free status," J.A. 2557.

Some Plaintiffs testified that although they had received documents containing the reservation-of-rights language, they either hadn't read that language—instead relying on representations made in-person by CONSOL representatives—or had dismissed it for one reason or another. Prater testified that a Human Resources representative said about the reservation of rights, "You don't have to worry about that language there; that's attorney's language." J.A. 468. Others testified that they simply weren't aware that their benefits could be terminated because the reservation of rights had not been mentioned at any of the in-person presentations at which CONSOL corporate representatives discussed benefits.

On September 30, 2014, CONSOL notified its employees, including all Plaintiffs, that retirement benefits were being terminated. Specifically, any employee who retired the following day or later would be ineligible for retirement benefits. Those who were already

6

retired—including Plaintiffs Fitzwater, Bright, Casey, and Jack—would continue to receive retirement benefits for five years, through 2019.[3] Those who were eligible for retirement on the day of the announcement could opt to retire by midnight that day, and were told that if they did so, they would also receive retirement benefits for five years. Active employees who did not opt to retire on the announcement date would receive lump-sum transition payments in amounts that varied based on their years of service with the company. Plaintiffs Prater and Gilbert opted to retire on September 30, 2014, taking the offer of five years of retirement benefits and forgoing the lump-sum payment offered to active employees.

But then, in 2015, CONSOL informed employees that it would actually terminate retirement benefits for everyone as of the end of 2015—not 2019. CONSOL offered those who had retired on September 30, 2014, including Prater and Gilbert, a prorated lump-sum transition payment, again based on years employed but reduced to reflect that they had received nearly a year of retirement benefits. CONSOL did not offer any such payment to those who were already retired before September 30, 2014, including Fitzwater, Bright, Casey, Jack, and Long.

## B.

In 2016 and 2017, the seven Plaintiffs filed two lawsuits, which the district court consolidated in December 2017. *See Fitzwater v. CONSOL Energy, Inc.*, No. 2:16-cv-9849

---

[3] Long's retirement benefits terminated in 2014 when, through corporate restructuring, his retirement benefits were transitioned from CONSOL to Murray Energy, which separately terminated benefits that year. *Fitzwater*, 2024 WL 4361963, at *4, *8.

7

(S.D.W. Va.); *Casey v. Consol Energy, Inc.*, No. 1:17-cv-3861 (S.D.W. Va.). Before the consolidation, the plaintiffs in the first suit had moved for class certification; the district court denied the motion as moot in light of the consolidation. *Fitzwater v. CONSOL Energy, Inc.*, No. 1:17-cv-3861, 2019 WL 5191245, at *1 (S.D.W. Va. Oct. 15, 2019). Plaintiffs in the consolidated case then filed a supplemental class-certification motion, which the district court denied on the merits. *Id.* at *18. Plaintiffs later filed a renewed class-certification motion, which the district court rejected on timeliness grounds. *Fitzwater v. Consol Energy, Inc.*, No. 1:17-cv-3861, 2020 WL 3620078, at *6 (S.D.W. Va. July 2, 2020).

Defendants moved for summary judgment, which the district court granted as to most of Plaintiffs' claims. *Fitzwater v. CONSOL Energy, Inc.*, No. 1:17-cv-3861, 2020 WL 6231207, at *24 (S.D.W. Va. Oct. 22, 2020). However, as relevant for this appeal, the court denied summary judgment as to Plaintiffs' claim for breach of fiduciary duty. *Id.* at *17.

That claim proceeded to a bench trial in 2021. *Fitzwater*, 2024 WL 4361963, at *1. Following trial on the breach-of-fiduciary-duty claim, the court found in favor of Plaintiffs Prater and Bright but found against all other Plaintiffs. *Id.* at *25. It explained that Fitzwater, Gilbert, Casey, and Long had failed to demonstrate that they detrimentally relied on material misrepresentations by CONSOL and that Jack's claim was barred by the statute of limitations. *See id.* at *21–25. The court ordered that Prater's and Bright's retiree welfare benefits plans "be reformed to provide the benefits as each reasonably expected, that is medical, prescription drug, vision, dental, and life insurance for the remainder of life." *Id.* at *26. It otherwise entered judgment in favor of CONSOL.

8

Plaintiffs timely appealed the denials of class certification, the summary-judgment order, and the bench-trial decision.[4] CONSOL noted a timely cross-appeal of the bench-trial decision.

II.

We begin with Plaintiffs' appeal of the district court's class-certification decisions. "The district court's denial of class certification is reviewed for an abuse of discretion, and such decisions are 'generally accorded great deference.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1380 (4th Cir. 1995)). We affirm.

Plaintiffs' notice of appeal cited both of the district court's substantive class-certification denials: its denial of the initial post-consolidation motion in October 2019, and its denial of the renewed motion in July 2020. *See Fitzwater*, 2019 WL 5191245, at *17–18; *Fitzwater*, 2020 WL 3620078, at *6. Their Opening Brief similarly cites both decisions, specifically taking issue with the district court's failure to certify a class related to their claim for discrimination based on claims experience.[5]

But Plaintiffs conflate the issues resolved in those two separate orders and make only general arguments on appeal that fail to address the relevant reasoning of each order.

---

[4] Bright did not join the appeal, and Prater joined it only as to the denial of class certification and the summary-judgment order.

[5] Plaintiffs' Response-Reply Brief argues that the district court erred in failing to certify a class as to other claims, but they forfeited those arguments on appeal by not clearly making them in their Opening Brief. *See Platt v. Mansfield*, 162 F.4th 430, 444 n.10 (4th Cir. 2025).

9

At the time of the October 2019 order, Plaintiffs claimed that CONSOL "discriminated against individuals who had retired as of September 30, 2014"—like all seven Plaintiffs—"by terminating their welfare benefits without providing them the same cash transition payment given to active employees." *Fitzwater*, 2019 WL 5191245, at *15. The district court denied class certification. *Id.* at *16.

On appeal, Plaintiffs challenge its reasoning in doing so. But importantly, after that October 2019 decision, Plaintiffs explicitly "dropped the allegation that the distinction between active [employees] and retirees comprised discrimination." Pls.' Opp'n Summ. J. at 17, *Fitzwater v. Consol Energy, Inc.*, No. 2:16-cv-9849 (S.D.W. Va. June 12, 2020), Dkt. No. 234. They do not explain how we could conclude that the district court erred in declining to certify a class defined by a theory of discrimination that they have since abandoned.

After abandoning the active-versus-retired-employees theory of discrimination, Plaintiffs "refashion[ed] their claim . . . to focus on CONSOL's decision in June 2015 to offer the pro-rated transition payments" only to the group of new retirees who accepted the September 30, 2014, offer of five years of retirement benefits (including Prater and Gilbert), and not to the group of earlier retirees (including the five other Plaintiffs). *Fitzwater*, 2020 WL 6231207, at *18. They attempted to reformulate their proposed class in accordance with this new theory of discrimination. *Fitzwater*, 2020 WL 3620078, at *2. But in a July 2020 order, the district court rejected their class-certification request as untimely and unsupported by new evidence. *Id.* at *2–6.

10

In their Opening Brief, Plaintiffs do not even acknowledge the district court's reasoning in the July 2020 order, much less make any effort to explain why it was erroneous. "As a result, this argument is not properly before us." *United States v. Evans*, 165 F.4th 255, 267 (4th Cir. 2026).

We therefore affirm the district court's class-certification orders.

### III.

We next consider Plaintiffs' appeal of the summary-judgment order, which we review de novo. *Mission Integrated Techs., LLC v. Clemente*, 158 F.4th 554, 562 (4th Cir. 2025). Plaintiffs argue that CONSOL discriminated against certain retirees—including Fitzwater, Bright, Casey, Long, and Jack—based on "claims experience" in violation of ERISA, and that the district court erred in rejecting that claim at summary judgment. We disagree and affirm.

ERISA governs the administration of employee benefit plans with an eye toward protecting the interests of "employees and their dependents." 29 U.S.C. § 1001(a). In line with these concerns, ERISA prohibits covered "group health plan[s]" from "establish[ing] rules for eligibility" for a plan based on "health status-related factors," such as "[m]edical history," "[g]enetic information," and—relevant here—"[c]laims experience."[6] *Id.* § 1182(a)(1). The bar on claims-experience discrimination means that a plan is not permitted to apply less favorable eligibility rules based on the fact that one group of

---

[6] We assume, for the sake of argument, that the transition payments were required to abide by these restrictions. *See Fitzwater*, 2020 WL 6231207, at *22 n.25 (district court declining to reach CONSOL's argument to the contrary).

11

employees has been more expensive to insure than another group. However, plans may make "bona fide employment-based classification[s]," including based on "current employee versus former employee status." 29 C.F.R. § 2590.702(d)(1).

As discussed, Plaintiffs' theory of discrimination shifted over the course of litigation. The theory they pressed at summary judgment was the second noted above: that CONSOL impermissibly distinguished "between the 50 newly retired employees [who were] given the benefit of the pro-rated payment, and the earlier retirees already in the Retiree Benefits Plan who were not." *Fitzwater*, 2020 WL 6231207, at *18. They contend that CONSOL drew this distinction "based on claims experience"—that is, that it discriminated against the earlier retirees because they had more extensive claims experience. *Id.* at *22.

It is certainly true that, on average and all other things being equal, a group of people that has been receiving retirement benefits for a longer period than another group has can be expected to have filed more claims. So, the two groups may well have had different levels of "claims experience." But, as the district court correctly concluded, Plaintiffs were required to show discriminatory intent—not just differing impacts on the two groups. And the summary-judgment record, even viewed in the light most favorable to Plaintiffs, did not support such a showing.

The applicable provision of ERISA speaks to disparate treatment, not disparate impact. ERISA provides that a group health plan "may not establish rules for eligibility . . . based on" claims experience. 29 U.S.C. § 1182(a)(1). This language directs attention to the front-end eligibility determination—not to the after-the-fact impact. *Cf. Tex. Dep't of Hous.*

12

*& Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 533 (2015) ("[A]ntidiscrimination laws must be construed to encompass disparate-impact claims when their text refers to the consequences of actions and not just to the mindset of actors, and where that interpretation is consistent with statutory purpose."). Thus, the statute constrains how the employer may treat employees in setting rules for plan eligibility, not more broadly how the employees may be affected.

Where a statute prohibits disparate treatment, rather than disparate impact, "[p]roof of discriminatory motive is critical." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)); *accord Tex. Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 524. And here, the district court correctly concluded that Plaintiffs had not pointed to any evidence of discriminatory intent sufficient to preclude summary judgment.

There is no evidence in the summary-judgment record that CONSOL even considered claims experience when deciding to whom it would offer the prorated payment. *Fitzwater*, 2020 WL 6231207, at *20. Instead, the record showed that CONSOL distinguished between those employees who were retired prior to September 30, 2014, and those who were still active employees as of that date and thus would have received a lump-sum payment, but opted to forgo it based on CONSOL's representation that they would receive retirement benefits for five years. *Id.* at *21. In other words, "[t]he record indicates that CONSOL made a bona fide classification based on the distinction between active and retired employees, and then offered a pro-rated version of the same benefit only to those retirees to whom they had previously made the offer." *Id.* at *22.

13

Of course, a plaintiff seeking to show discriminatory intent is not required to produce "smoking gun" evidence of discrimination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010). But they still must point to something from which a reasonable factfinder might infer such discriminatory intent. Here, Plaintiffs have failed to do that. Accordingly, we affirm the district court's summary-judgment decision.

IV.

Both parties also appeal the district court's judgment following a seven-day bench trial. "We review a district court's judgment rendered following a bench trial 'under a mixed standard of review—factual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo.'" *Al-Sabah v. World Bus. Lenders, LLC*, 160 F.4th 540, 549–50 (4th Cir. 2025) (quoting *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 398 (4th Cir. 2025)). In conducting clear-error review, "we assess only whether the district court's account of the evidence is plausible in light of the record viewed in its entirety. And in cases in which a district court's factual findings turn on assessments of witness credibility or the weighing of conflicting evidence during a bench trial, such findings are entitled to even greater deference." *Chavez-Deremer*, 147 F.4th at 398 (cleaned up). Applying these standards here, we affirm.

ERISA provides that a plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of," as relevant here, "providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1). We have held that fiduciaries must "refrain" not only "from intentionally misleading" beneficiaries, but also from "'misinform[ing] employees through

14

material misrepresentations and incomplete, inconsistent or contradictory disclosures.'" *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001) (quoting *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir. 2000)). Where a fiduciary violates this requirement, ERISA authorizes a court to grant "appropriate equitable relief . . . to redress" the violation. 29 U.S.C. § 1132(a)(3)(B). In such a case, "the relevant standard of harm will depend upon the equitable theory by which the District Court provides relief." *CIGNA Corp. v. Amara*, 563 U.S. 421, 425 (2011).

Below, the district court relied on a Third Circuit case for the proposition that in order to prevail on a breach-of-fiduciary-duty claim under ERISA, a plaintiff must show "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Fitzwater*, 2024 WL 4361963, at *15 (quoting *Burstein v. Ret. Acct. Plan for Emps. of Allegheny Health Educ. & Rsch. Found.*, 334 F.3d 365, 384 (3d Cir. 2003)). While Plaintiffs have come to dispute the detrimental-reliance element, they forfeited that argument by not presenting it in their Opening Brief.[7] *deWet v. Rollyson*, 157 F.4th 344, 350 n.4 (4th Cir. 2025). In fact, they

---

[7] For the first time in their Reply-Response Brief, Plaintiffs argued in passing that for the equitable remedy of plan reformation, "detrimental reliance need not be shown," and cited an unpublished Second Circuit case. Reply-Response Br. at 29 (citing *Osberg v. Foot Locker, Inc.*, 555 F. App'x 77, 80–81 (2d Cir. 2014)). Then, the day before oral argument, they filed a notice of supplemental authority pursuant to Federal Rule of Appellate Procedure 28(j). They cited a years-old Fourth Circuit opinion and a more-than-decade-old Supreme Court opinion. Notice of Additional Authority at 2, *Fitzwater v. Consol Energy, Inc.*, No. 24-2088 (4th Cir. Dec. 9, 2025), Dkt. No. 72 (first citing *Peters v. Aetna Inc.*, 2 F.4th 199, 236 (4th Cir. 2021); and then citing *Amara*, 563 U.S. at 443). We decline to consider their belated argument.

affirmatively waived this contention by agreeing in their Opening Brief that they needed to show detrimental reliance. *See Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 779 (4th Cir. 2023) (holding that the defendant "waived the possible application of Connecticut law by affirmatively litigating under the substantive law of North Carolina"). So, for purposes of this appeal, we follow the lead of the parties and the district court and assume that Plaintiffs must show detrimental reliance.

Plaintiffs contend that the court erred when it found that Fitzwater, Long, Casey, and Gilbert failed to establish detrimental reliance on CONSOL's material misrepresentations.[8] But in making that argument, they do not disagree with the district court's factual conclusions that each of those Plaintiffs had knowledge that their benefits could be terminated at any time. *See Fitzwater*, 2024 WL 4361963, at *8–11, *13–15, *20–23. Indeed, the argument section of Plaintiffs' Opening Brief makes no arguments about the individual Plaintiffs at all, instead focusing on CONSOL's behavior as to all of them. This failure to grapple with factfinding that was central to the district court's analysis—issued following a detailed, lengthy bench trial—is fatal to Plaintiffs' arguments on appeal.

---

[8] Plaintiffs also argue that the district court erred when it entered judgment against Jack based on untimeliness. They contend that the district court should have applied equitable tolling pursuant to the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). We do not reach this argument because Plaintiffs failed to preserve it below. *Bell v. Brockett*, 922 F.3d 502, 513 (4th Cir. 2019) ("Appellants may not raise arguments on appeal that were not first presented below to the district court.").

16

For its part, CONSOL argues that the district court erred when it found in favor of Prater and Bright on the breach-of-fiduciary-duty claim. We disagree with its contentions, too.

First, CONSOL argues that the statements on which Prater and Bright relied were true at the time they were made and therefore did not constitute misrepresentations. Specifically, CONSOL argues that at the time of the alleged misstatements, it intended to provide benefits for life—but that it also made employees aware of its right to change or terminate benefits.

The problem for CONSOL is that it fails to address the district court's well-supported conclusion that Bright was not made aware of the reservation-of-rights clause, and that while Prater was, he was specifically told he did not "have to worry about" it because it was mere "attorney's language." *Fitzwater*, 2024 WL 4361963, at *11 (quoting J.A. 468) (citing J.A. 480–81); *see id.* at *12. We see no clear error in the district court's determination that, without that piece of the puzzle, statements that the benefits would be for life were misleading—whatever CONSOL's intention at the time. *See id.* at *5–6, *11–13, *21.

Second, CONSOL argues that the district court erred because Prater and Bright failed to show how they detrimentally relied on the misrepresentations. We are not persuaded. Prater explained that he opted to take the job with CONSOL—leaving his then-current employment—because, during his interview, he was told that if he reached certain age and seniority requirements, he would receive retirement benefits "for the rest of [his] life." J.A. 464. CONSOL then repeated that misrepresentation to him throughout his career.

17

*Fitzwater*, 2024 WL 4361963, at \*22. The district court concluded that Prater put great weight on this promise of retirement benefits, and that therefore "he continued his employment with CONSOL on the basis of these misrepresentations to his detriment." *Id.* Bright similarly made significant life decisions based on CONSOL's erroneous promises: He planned his retirement around those false assurances. We cannot say that the district court clearly erred in reaching the commonsense conclusion that he relied on those statements to his detriment. *See id.* at \*23.

## V.

Having reviewed the complete record in this case, we are satisfied that the district court dispatched its duty admirably. None of the arguments presented by the parties convinces us that vacatur or reversal is appropriate. We affirm the judgment in full.

*AFFIRMED*

18